Judge Marshall

delivered the Opinion of the Court.
If, as is assumed in the decree under revision, “the whole of the partnership property has been sold under execution to pay the partnership debts,” then, if there were no outstanding demands against the firm, and no effects of any kind to be divided among the partners, all that could be done, in finally adjusting the concern^ *409 Would be to ascertain the balance between the members of the firnij and to decree in favor of the creditor part Aer, against the debtor partners, separately and personally. And on this hypothesis, the only question td be determined by this Court, would be as to the correctness of the amount decreed in favor of Carter against his partners, Savage and Deering, respectively.
A partner who has furnished hands to labor for the firm, has no right to charge the whole value of their services to his copartners: the proper way is for him to charge it to the firm, which will make his own interest, as well as that of each other partner, contribute its due share.
Advances made by one partner, for services rendered the firm, are chargeable to those who composed the firm when the services were rendered; one who had previously sold out and retired, is not liable for any part of them.
Taking the' case in this aspect, for the present, we find the Commissioner’s report, on which the decree was based, excepted to in two items only; as to each of which the exception was overruled. The first of these exceptions is, that Carter should not have been allowed a credit for the whole value' of the hire of certain slaves furbished by him to labor for the firm during part of the year 1832, because he was a partner td the extent of one half of the stock of the firm, and bound to contribute to that 'extent. This is certainly a reason why the other partners should not pay him out of their separate property, more than one half of the amount; but it is no reason why, in his account with the firm, he should not be credited by the whole amount, which is the usual and proper mode of making up the account. The decree gives him only one half of the excess of his advances beyond th'dse of the other partners, and therefore, only one half of this particular item, arid is in this réspect free from error.
The other exception to the report, relates to a -credit of eighty two dollars allowed to Carter; in his account with ’the firm of Deering, Carter and Savage, for that ‘sum paid by him to Joseph Morris, for services rendered to the firm of Deering and Carter, after Savage had sold his interest to Deering and his son. Savage was under no responsibility to pay for these services, or to reimburse Carter for the payment made .by him. This burthen should have been divided between Carter arid the Deerings; and the exception by Savage, to this item, should have been sustained.
Were this the only error, it would be 'corrected by subtracting twenty dollars' and' fifty Cents from the amount decreed against Savage, arid adding the same sum to the amount decreed against Deering. And this should be done under any aspect which the casé may assume; But- *410 we are of opinion that the hypothesis which indicates this as the only error in the decree, is unsupported, in the most essential point, by the pleadings and process in the cause.
Where, upon closing a partnership, in chancery, the effects consist merely of bad and doubtful debts, and their proceeds in the hands of collectors; the proceeds, if any, should be applied to the debts of the firm if any; then, towards the balance due a creditor partner, & finally, the residue good and bad, should be divided among the partners, according to their interests.
The object of a partnership was to build mills, and carry on the business of sawing, grinding &c. by steam; and one of the partners, whose interest was a fourth, furnished the land upon which the mills were erected, as part of his share of the capital. After a time he sold out to new partners, who took his place in the firm—reserving a lien upon the legal title to the land, to secure him for the price, and for any payments which he might have to make on account of the firm: held that, this lien was subordinate to that which another partner had the same interest, for a balance due to him from the retiring partner, on the partnership accounts; and the share sold should be subjected to the payment of such balance, before a resort should be had to the retired partner personally.
*410 It may indeed be inferred, that all the personal property of the firm had been sold under executions against the firm; and it may be true, although it does not certainly appear, that all the demands against the concern subsisting at the time the bill was filed, have been satisfied; It is certain they were reduced to a sum not exceeding fifty dollars, when the decree was rendered. And it seems that all the debts remaining due to the firm from strangers, amounting to between four and five hundred dollars^ were deemed unavailable,- by the Commissioner, in consequence of insolvency, removals, loss of time, or counter demands by the debtors.- But a portion of them were in the hands of officers and others for collection. And it would have been proper, and will still be proper, before final decree, to ascertain the precise condition of the partnership affairs in this respect, and to make a final disposition of this branch of the subject, by providing for the payment of outstanding debts, if there be any. The proceeds of the debts due, if any thing has been made since the former report of the Commissioner, should be applied, first to the extinguishment of demands against the firm, if any remain; the residue should be applied towards the satisfaction of Carter’s demand on account of the excess of his advancements; and the debts still remaining due to the firm, whether good or bad, should be divided according to the interests of the partners. This, however,-, seems to be a subject of little interest, and might not have justified a reversal of the decree on the writ of error of Savage; and we proceed to a more substantial objection.
The partnership was instituted for the purpose of constructing and ’ carrying on a steam mill for sawing stone and lumber and for grinding grain. The capital stock was to consist of contributions to be made by the partners, equivalent to eight thousand dollars; of which Carter was to contribute four thousand dollars,, and Savage and Deering two thousand dollars each; and the land *411 necessary for the establishment, was to be contributed by Savage, at the price of one thousand dollars, as a part of his contribution of capital. The buildings and machinery of the company were erected on the land furnished by Savage, and his interest in the land was reduced to one fourth, which was also the extent of his interest in the whole property of the firm — subject, however, to the charge of making up any deficiency in the advancements of capital upon that share. And to this charge it remained subject in the hands of Deering and son, to whom Savage sold out his interest, reserving the legal title, for the express purpose of securing the price, which was the exact amount of his advances, and of indemnifying him against any future liability as partner, either for demands against the firm, or for contributions to it. But this lien of Savage upon the one fourth which he sold to the Deer-1 , , , , , ,, mgs, was subordinate to that or Carter upon the same fourth, for the reimbursement of so much of his excess of advancements as was properly chargeable on that fourth, that is, for so much as was properly chargeable against o , r r bavage as a partner.
If two of three partners make over their interests to strangers, and an ex'on against them and their partner is levied on the remaining interest as the property of the latter, and it is sold and purchased, directly or indirectly, by one of the others, the purchase will inure to the benefit of all three, and merely entitle the purchaser to a credit with, the firm, for the amount of the purchase. And, if he could hold it, to his separate use, he could not demand any contribution upon it, from the late owner. And, if the purchase was by a stranger, the late owner would be entitled to a credit with the firm, for the amount of its debt paid by the sale. But—
*411 And it seems to us that, conceding that Savage did not, by his withdrawal from the firm, relieve himself entirely from personal responsibility to make up this proportion of Carter’s excess of advancements, still the natural and primary fund for equalizing the advancements, was the interests or share on which the contribution was deficient, and that, in equity at least, the personal responsibility of the retiring partner should only be resorted to after the other resource had failed. Such a course would at least save circuity of action. And unless there was an entire change in the condition of the property, by a sale of the whole of it under executions against the firm, which would have destroyed all liens as between the partners, or unless Savage’s fourth was in some manner withdrawn from its liability to Carter, we think this course should have been pursued in the decree.
But there is no intimation in the pleadings or proof, that the entire property was thus sold; and although it is alleged, m an answer and cross bill filed by Savage, but not noted on the record, that Carter had sold his interest *412 to his brother, and Deering had sold his to his son, and that both sales were fraudulently made, for the purpose, of withdrawing those interests from the reach of an execution against the firm; and that, -in consequence of these conveyances, the interest -of Savage alone, which he had sold to Deering, being left subject to the execution, was, sold at a great sacrifice, and purchased in for the benefit of Carter — it seems probable, from the deposition of Savage himself, and from other circumstances in the cause, that this sale, being in fact within the control of Carter, was set aside by arrangement betwen the partners, and cannot, therefore, be regarded as effecting any change in their interests. And, indeed, if Carter did purchase, directly or indirectly, under the. circumstances .stated, he would have purchased for the benefit of the partners, ,and would have been entitled only to be credited for the amount of debt which he had paid. Or, if this were, otherwise, Carter could not hold Savage’s interest by such a purchase, and at the same time demand from Savage a farther contribution on account of that interest, Moreover, if the sale was valid, and a stranger had" purchased and become invested with the title to one fourth of the establishment in the name of Savage’s interest, Savage would, at least, have been entitled to a credit; with the firm, for the amount of the firm debt thus paid; and as this sum was equal to his deficiency of capital, Carter would have had no further demand against him. But the more equitable, and, as it would seem, the true, consequence, would have been, that the purchaser would have been invested, not with Savage’s interest specifically, but With ap interest of one fourth, and that the partners would have had the same proportionate interests in the remaining three fourths of the establishment, which they before had in the whole; so that, in that aspect of the case, Carter and Savage would have had the same rights in the one fourth of the three fourths, as they had before in the one fourth of the whole, and there would have been the same propriety in decreeing that Carter’s demand, so far as it arose out of the deficiency in Savage’s contribution, should be satisfied out of Savage’s interest in the property.
The true effect, it seems, of selling the interest of 1 partner, under an an ex’on against the firm, would be to invest the purchaser, not with that specific share, but with an interest in the whole stock, equal to the share of the partner whose interest was sold; leaving him, and the others interested in the residue, in the same proportions that they had in the whole, before the sale.
Where the property of a partnership consisted of mills, built on land that one of the firm had contributed as part of his share of the capital, but no part of which he had conveyed to the others, and he sold out, reserving a lien on, the land for the price &c. and upon a settlement of the partnership, he was found indebted to another partner, who had of course, a lien on the share sold—as that share should have been subjected to that balance first, and then under the lien which the vendor reserved, it was erroneous, to decree that he sho’d convey the land to the firm, for the benefit or purchasers, and thereby defeat his own lien.
But, as already intimated, it seems most probable, that this sale was set aside by the parties; and, as it does not appear that Savage had ever conveyed his interest as a partner to any one, he, as well as Carter, must be considered as retaining, up to the time of the decree, a lien upon that interest—Carter for a proportionate reimbursement of his advances, and Savage for the reimbursement of all of his, so far as he had not been reimbursed, and especially for his indemnity against all .liabilities after his sale to Deering. For neither of these liens could have been affected by any transfer nade by Deering and Son, or either of them. And -if this lien was not resorted to as the direct means of reimbursing Carter, it should at least, have been resorted to for reimbursing to Savage the amount which he was decreed to pay to Carter. But, instead of enforcing either of these liens, each of which is set up by the parties respectively entitled, the Court, after decreeing against Savage personally, the amount of his deficiency of contribution, decreed that he should convey the land to the firm, for the benefit of purchasers; which, if it have any effect at all, would cut off his lien entirely, and then gave him a barren decree over against Deering, who seems to have been insolvent, for the same sum which he, Savage, had been decreed to pay to Carter.
How far Deering and Son may have reimbursed to Savage, the amount of his original advances, or of payments made by him since his sale to them, does not certainly appear, and cannot be regarded as having been a subject of litigation between them in this suit. Savage' has not proceeded in this case, either for a decree against them personally, or for the enforcement of his lien, as to this matter; but only as to the sum to which Carter might be entitled on account of his (Savage’s) deficiency of contribution. He cannot, therefore, complain that the Court did not decree the Deering’s to pay him what may be due on their purchase of his interest, or that it did not enforce his lien therefor. But he has a right to; complain if the decree has unnecessarily destroyed that lien, as it may possibly have done, if that part of the decree which declares the operation of the deed which he is directed to *414 make, has any effect. And he has a right to complain, that he has been subjected to a personal decree in the first instance, when the sum decreed against him, should, if practicable, have been made out of the interest in the partnership stock upon which both Carter and himself held a lien. If, upon the return of the cause to the Circuit Court, he should desire an investigation of the accounts between the Deerings and himself, this may be had upon his cross bill against them, but in subordination to Carter’s remedy, so far as the enforcement of the lien is concerned.
Where the allegations of a cross bill are inconsistent with the admissions of the answer, they can not be taken as true, tho’ unanswered.
In the conclusions to which we have come, in regard to the mode in which Carter’s claim should be satisfied, we have looked only to the equity of the case as growing out of the relations of the parties to each other, and to the partnership property, and have not taken into view the last cross bill of Savage, because its allegations, so far as they tend to relieve him from all personal responsibility to Carter, are inconsistent with the express and implied admissions of his answers, which were sworn to, and therefore, ought not to be taken as true, though unanswered.
The decree, upon the original and cross bills, is reversed, and the cause remanded, with directions to correct the accounts between the parties, and to ascertain the facts with regard to the debts due by the firm, and to it, and to dispose of that branch of the subject as above directed. Also, to ascertain whether Savage has, by sufficient deed, conveyed the land mentioned in the articles of partnership, according to his undertaking therein; and if he has not, to cause a proper conveyance to be made, according to the tenor of said articles. And also, to decree that Savage’s interest of one fourth in the said land and appurtenances, or so much thereof as may be necessary, be sold to satisfy the sum found due from Savage to Carter, by the account aforesaid, together with the costs; and if said interest should prove insufficient to satisfy the sum payable to Carter as aforesaid — for the ascertainment of which fact the cause should be retained — then, to decree the payment of the deficiency by Savage; and to decree the. payment of the same sum by the Deering’s to *415 Savage; and Deering will have a right to insist upon the application of the same principles as between Carter and himself.