# Webb, *et al. v.* Butler, *et al.*

*Bill for an Accounting and Settlement of Trust.*

(Decided April 22, 1915.   68 South. 369.)

1. *Estoppel; Judicial Proceedings; Prior Contract.*—Where the respondent who was one of several parties in a banking business, signed an agreement appointing trustees to administer the firm property, and the agreement was confirmed by the chancery court, such party cannot by demurrer question a bill to compel him to pay his pro rata part of the debt, the firm being insolvent, on the asserted ground that the statutes provide the only method for settling the affairs of the bank.

2. *Partnership; Dissolution; Accounting.*—On a bill to dissolve a partnership, courts of chancery will enforce an accounting although the accounts are not complicated.

3. *Same; Dissolution.*—Every change in the personnel of the partnership works a dissolution.

4. *Same; Retiring Partner.*—A retiring partner is not relieved from liability to creditors unless the creditors agree with the new firm for such release.

5. *Same; Agreements.*—An agreement of a new firm formed from an old one by the addition of a new member to pay debts of the original firm must be consented to by all the members of the new firm.

6. *Release; Liability of Partners; Discharge of One.*—Credit is extended to a firm on the individual liability of each, and hence creditors may discharge one partner and recover against another.

7. *Partnership; Contribution.*—A partner forced to pay firm debts may require contribution from his co-partner.

8. *Same; Action; Parties.*—Where some, but not all of the members of an insolvent firm by written agreement appointed trustees to close the partnership affairs, which agreement was ratified by the chancery court, all the partners should be made parties to a bill to compel one member signing the agreement to pay his pro rata share of the debt, for he is entitled to an accounting.

9. *Equity; Pleading; Multifariousness.*—As each case depends on its own merits, in testing a bill for multifariousness, the whole bill must be considered.

10. *Same.*—Considerable discretion is lodged in the nisi prius court in determining whether a bill is multifarious.

11. *Same.*—Where, before becoming a partner in a banking venture, a party transferred land to his daughter, and after the partnership became insolvent, such party executed a second deed to his daughter, the first being defective, the daughter could not be joined as a party, and the conveyance to her questioned, in a bill to compel such party to pay his pro rata share of the firm debts, as such joinder would make the bill multifarious as to the daughter, notwithstanding equity's desire to avoid a multiplicity of suits; multifariousness, under section 3095, being where a respondent is brought in upon a record with a large portion of which he has no connection, or where plaintiff demands several different matters of different natures of different respondents by the same bill.

APPEAL from Jackson Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by J. C. Butler and another, against H. A. Webb and others, for an accounting, and to require a pro rata payment of liability. From a decree overruling demurrers to the bill, respondents appeal. Reversed and remanded.

LAWRENCE E. BROWN, for appellant.

BOULDIN & WIMBERLY, for appellee.

THOMAS, J.—This is an appeal from a decree of the chancery court overruling demurrers to the amended bill.

One of the appellants and the appellees, with other parties, as partners, on the 14th day of April, 1906, organized and became engaged in a banking business under the firm name of the Bank of Paint Rock, and

continued therein until the time of the bank's insolvency on October 21, 1910. Each partner's interest was evidenced by a certificate for the amount of shares held by him. The bill alleges that: "The shares or interests of the different holders were transferred from time to time and the business continued by taking in new partners on transfer of such stock. At the time of the dissolution of the partnership, the complainants and defendants were the existing partners in said business."

It is further alleged that, subsequent to the closing of the business, some of the surviving partners, by a written agreement, designated complainants, J. C. Butler and J. T. Wilburn, trustees, to collect the assets and close the partnership affairs. The agreement was confirmed by order of the chancery court, in the case of *Garber, Attorney General, v. Bank of Paint Rock,* Under the agreement the trustees accepted the trust, and are seeking by this bill to wind up said trust and make a final settlement of the partnership affairs. The trust agreement contained the following clause: "It is expressly understood that the arrangement evidenced hereby is made for the purpose of effecting the payment and discharge of said debts and obligations of said Bank of Paint Rock as speedily and economically as the same may be accomplished, and that no party to this agreement is to be in any manner prejudiced as to his rights to require any person who may be liable to make contribution for or on account of such liability, and that the equities or rights among the persons who may contribute towards the payment or satisfaction of such debts and obligations of said bank, or against any other party who may be liable to make contribution, shall not in any manner be prejudiced by what is hereby provided for, and nothing herein contained, and nothing contained in any other papers, contracts, or

agreements made contemporaneous herewith, for the purpose of effecting a satisfaction of said debts, shall be held to waive or release any other person or any other estate from its just proportion of the losses and indebtedness of said bank, which might be ascertained to be due by such person or estate on an accounting among the partners engaged in said banking business, neither shall anything herein, aforesaid, operate to prevent such accounting among said partners, at law or in equity, as they may be advised."

By amendment a party respondent was made a complainant, and it was further alleged that on the 20th of October, 1910, W. H. Bridges, one of the organizers and the active manager and cashier of the bank, died; that thereafter the complainants and respondents, as surviving partners of said firm, settled with and discharged from further accounting the Bridges estate, and that the greater part of the contributions from the surviving partners had been made by the complainant J. C. Butler, and the other partners are indebted to him on final settlement of the partnership.

The bill further alleges that appellant H. A. Webb became a member of the partnership April 4, 1906, and continuel a member until the dissolution, owning one-tenth of the interest therein; that his share of the indebtedness would be about $2,000, for which he is liable to contribute; that on September 16, 1905, appellant and his wife undertook to convey to their daughter Mrs. Freeman, upon a voluntary consideration, their homestead of 120 acres of land in Jackson county, Ala., reserving to themselves the use and occupation thereof for life; that on December 29, 1910, they reconveyed the same lands to the same daughter Dovie M. Freeman; that the first deed was defectively executed, and that the second deed was "voluntary and void as to

his then existing liability as a member of said partnership;" that "the said Dovie M. Miller Freeman is now in the possession of said lands, but the said H. A. Webb has reserved a benefit therein and is in the possession of the rents and profits until this date."

The prayer of the bill makes appellants H. A. Webb and Dovie M. Freeman parties respondent, together with five other members of the partnership, and prays: (1) That "an accounting be had and a settlement be made of the trust hereinabove stated, and that an accounting be had between said trustees and said partnership." (2) "That the total liabilities of said banking firm in excess of its assets be ascertained; that an accounting be stated between the several members of said partnership, and the amount due from each of them in payment of said liability to be ascertained and decrees be rendered in favor of those who have contributed more than their share toward the payment of said indebtedness and against those who have not contributed their full share." (3) "That the deeds marked exhibits B and C be vacated and set aside as fraudulent and void, and said lands be subjected to the payment of the amount found to be due from said H. A. Webb on said accounting."

(1) 1. The demurrer of respondent Webb that the statute provided an exclusive method of settling the affairs of an insolvent bank is answered by the allegation that the agreement appointing the trustees for the administration of the estate of the Bank of Paint Rock was signed by him, and was confirmed by the chancery court. He will not now be permitted to question by demurrer the ruling of the chancery court.—Stephens' Dig. Law of Ev. art. 102, p. 161; 3 Eng. Rul. Cas. 310; *Garrett v. Lyle,* 27 Ala. 586; 6 Mayf. Dig. p. 330.

(2-8) 2. The second class of demurrer is based on the failure to make parties to the bill all the partners of the insolvent bank during the conduct of the banking partnership from April 14, 1906, to October 20, 1910. It is obvious that a partner has the right to an accounting from his copartners at any time, and particularly upon the dissolution. Without it, it is impossible to know whether any particular partner of the business is a debtor or a creditor of his copartners. Courts of equity, in an action to dissolve a partnership, will force an accounting between the partners, even though the accounts are not complicated.—*Cruikshanks v. McVicar*, 8 Bevan's Rolls, 106. Where a partnership was conducted as a joint-stock company, "and the shares or interests of the different holders were transferred from time to time," without the consent or knowledge of the other partners, no inquiry, short of a complete reference in a court of equity, could determine whether a partner was debtor or creditor to his copartners.

The second paragraph of the bill alleges that the interests of individual partners were thus conveyed.

In the agreement, Exhibit A, attached, is the following recital of the parties at interest: "Now, therefore, in consideration of the premises, we, J. C. Butler, J. G. Cunningham, W. H. Hill, C. C. Keel, H. A. Webb, J. T. Wilburn, S. H. Kennamer, Wallace W. Bridges, each of whom is now or has heretofore been interested in said bank as a partner therein, our several shares or interest varying in amount, and recognizing our liability to contribute ratably towards the satisfaction and discharge of the indebtedness of said bank, do hereby agree and bind ourselves," etc.

The agreement was executed on the day after the bank's failure, and was signed by W. H. Hill and the

other partners. Hill is not made a party to the bill, nor is excuse given for his nonjoinder.

It is then clear, from an inspection of the bill and exhibits, that all debtor or creditor partners of the insolvent banking partnership were not made parties. This would have been necessary in a bill filed by a partner against the copartners in the banking enterprise. It was the more necessary that all parties interested be brought before the court in a bill filed by J. C. Butler, individually, and by J. C. Butler and J. T. Wilburn, as the two trustees, for the threefold purpose of having a settlement of the trust, requiring the contribution by the debtor partners, and of obtaining a cancellation of the deeds made by one of the partners, conveying his homestead to a daughter.

Every change in the personnel of a partnership works a dissolution.—*Warren v. Cash*, 143 Ala. 158, 39 South. 124. In *First National Bank v. Cheney*, 114 Ala. 536, 21 South. 1002, it was declared that a retiring partner is not released from liability to the creditors, unless the creditors agree with the new firm, or its members, for such release.—*Hall v. Jones*, 56 Ala. 493. An agreement of a new firm, formed from an old one by the addition of a new member, to pay the debts of the old firm must be with the consent of all the members of the new firm.—*Kling v. Tunstall*, 109 Ala. 608, 19 South. 907; *Humes v. Higman*, 145 Ala. 215, 40 South. 128; *Spaunhorst v. Link*, 46 Mo. 197.

In a suit between the creditors and the partners of a firm, the creditors may discharge one partner and prosecute the suit against the other partner to a judgment, for the reason that his credit was extended to the firm on each individual liability.—*Browning v. Grady*, 10 Ala. 999; *Roberts v. Strang*, 38 Ala. 566, 82 Am. Dec. 729; *First National Bank v. Cheney, supra*.

The partner that may be forced to pay firm debts has his right of accounting and contribution from his copartners.—*Cruikshank v. McVicar, supra;* volume 9, M. A. L. 398. This right to compel payment of, or to discharge from payment, any member of a partnership, would extend to trustees acting for all the partners for the purpose of liquidating the debts of the firm and for the adjustment of liabilities between the copartners.

In this case a number of partners (not all of them), by a written agreement ratified by the chancery court, appointed two trustees to close the affairs of the partnership. The trustees paid a portion of the debts of the firm with borrowed funds. They were authorized by the agreement to compel contribution from the debtor partners. The chancery court could not ascertain and compel contribution from debtor partners unless all of that class were before the court as parties. No power of selection was given the trustees, by law or by the agreement, to compel contribution from a less number than all who were liable. Appellant H. A. Webb could not be compelled to contribute, by the trustees' bill, if it did not make a party one of the partners, W. W. Hill, or any other partner that incurred liability by the purchase of an interest in the partnership.

We have seen that the agreement appointing the trustees expressly reserves this right to compel contribution between all partners liable for the debts of the firm as follows: "Nothing herein contained   *   *   * shall be held to waive or release any other person or any other estate from its just proportion of the losses and indebtedness of said bank, which might be ascertained to be due   *   *   * on accounting."

It is then clear that a bill filed by the trustees for an accounting should make parties all partners who

were liable for any of the debts of the partnership.—
*Dallas County v. Timberlake,* 54 Ala. 413; *Matthews
v. Mauldin,* 142 Ala. 434, 38 South. 849, 4 Ann. Cas.
344. All parties interested in the subject-matter of
the suit must be before the court.—*Parkman v. Aicar-
di,* 34 Ala. 393, 73 Am. Dec. 457; *Davis v. Vandiver,*
143 Ala. 202, 38 South. 850; *Gibson v. Tuttle,* 53 Fla.
979, 43 South. 310.

The overruling of the third and fourth grounds of
demurrer to the bill, as amended, was error.

(9-11) 3. The several grounds of demurrer for mul-
tifariousness may be treated together. The bill was:
(1) For settlement by the trustees of the trust; (2)
that an account be stated between the several members
of the partnership, and that the amount due from each
be ascertained and decreed in favor of those who have
contributed more than their share; and (3) that the
deeds of one of the partners to his daugter be set aside
as fraudulent and void.

In testing a bill for multifariousness, the whole bill
must be considered. Every case must be governed by
its own peculiar facts. In determining the question,
multiplicity of suits should be avoided. It is left in
a measure to the sound discretion of the court.—6 Mayf.
Dig. 318, § 114½; *Cicard v. Guyliou,* 147 Ala. 239, 41
South. 474.

In *Stone v. Knickerbocker, etc., Co.,* 52 Ala. 589,
Chief Justice Brickell said that a "bill may be multi-
farious as to one or more defendants without being so
as to others. * * *" The objection can only be tak-
en by the defendants who are affected by it.

The appellant H. A. Webb cannot then complian of
the joinder of his daughter as a party, for his right to
litigate his indebtedness to copartners is not affected
thereby.

Section 3095 of the Code of 1907 contains the new provision that a bill "is not multifarious which seeks alternative or inconsistent relief growing out of the same subject-matter or founded on the same contract or transaction, or relating to the same property between the same parties." This definition was not intended to fully define multifariousness in Alabama.

Justice McClellan, in *Ellis v. Vandegrift,* 173 Ala. 155, 55 South. 781, reaffirmed the sound and pertinent observations by Chief Justice Brickell made in *Truss v. Miller,* 116 Ala. 495, 505, 22 South. 863, 866, where it is stated that: "When * * * the objection is that distinct and unconnected matters are joined together against several defendants, it is not necessary that all the parties should have an interest in all the matters of controversy; it is sufficient if each defendant has an interest in some of the matters involved and they are connected with the others."

Can it be said that each of the defendant copartners has an interest in Mrs. Freeman's lands, unless it is alleged that her parent is a debtor copartner and that he is insolvent or unable to respond to the satisfaction of any decree that may be rendered in this behalf against him?

In *Exchange National Bank v. Stewart,* 158 Ala. 218, 48 South. 487, it was declared that the fact that a creditor's bill joined two or more defendants alleged to be fraudulent grantees in different transactions, in an effort to set aside fraudulent transfers of property, does not render it demurrable for multifariousness.

In *Wilks v. Wilks,* 176 Ala. 151, 57 South. 776, Justice Sayre held that a bill filed by the widow for the removal of the administration to the chancery court and to annul a conveyance of an interest in the estate to her children, that she had by fraud and misrepre-

sentation been induced to execute, was not multifarious. Does not the case of a bill filed by the trustees for a settlement of the trust, for contribution from copartners, and for cancellation of conveyances, by one of the partners, of his real estate, forming no part of the partnership properties, without an allegation of the insolvency of the partner, make a different case from that before the court in *Wilks v. Wilks, supra*.

In *Bentley et al. v. Barnes*, 155 Ala. 659, 47 South. 159, Justice Simpson held that when the object of the bill is to enforce specific performance of the contract of assignment of the interests of the partners in the partnership business, and an accounting from one who has transacted business with the assignor in violation of the provisions of the assignment, as well as an accounting from the other partners of the partnership business, the bill is multifarious, since the relief sought against the defendants respectively does not affect the interests of the codefendants.

The test applied by Chief Justice Brickell in *Truss et al. v. Miller, supra*, was whether "each defendant has an interest in some of the matters involved, and they are connected with the others."

In *Adams v. Wilson*, 137 Ala. 532, 635, 34 South. 831, the test was whether each defendant was connected with all the other defendants, and their separate interests in distinct questions were all connected with the single object of the suit that did not divide the remedy into two suits.

In *Tutwiler v. Tuscaloosa Coal, Iron & Land Co.*, 89 Ala. 392, 7 South. 398, the test was that "common relief was claimed" against the corporation, and against the former officer as to voting stock of the corporation, and it was not "shown that relief against the one would affect the other;" and the bill was held multifarious.

Justice Haralson, in *Page et al. v. Bartlett et al.*, 101 Ala. 203, 13 South. 768, declared multifarious a bill, for devastavit against personal representatives of some sureties on the administrator's bond, and for the enforcement, against the personal representatives of other sureties on the bond, of a penalty for failure to give notice to creditors. Justices ANDERSON, MAYFIELD, SAYFRE, and EVANS,, in *Siglin v. Smith,* 168, Ala. 398, 53 South. 260, held multifarious, both as to cause of action and as to parties, a bill filed by the mother of intestate for the removal of the estate of the latter to the chancery court, for administration, for ascertainment of the rights of the alleged heirs, where amended by the filing of a supplemental bill alleging that the intestate's widow had procured a conveyance from intestate's mother to her interest in the estate, and praying its cancellation, and making the widow, and her children by the intestate, parties to the cause.

In the case of *Baker v. Mitchell,* 19 Ala. 490, 20 South. 40, the object of the bill was to procure a settlement of the administration in chancery, to ascertain the interest of the estate in a mercantile copartnership composed of the decedent, in his lifetime, and the administrator, his former partner, and to require this former partner and administrator to disclose the true interest in certain lands which the administrator claimed to own in his individual right. The court properly proceeded to a final settlement of these accounts and of the administration. The same question was involved under the facts of *Noble v. Tate,* 119 Ala. 399, 24 South. 438.

If we may look for a simpler definition of multifariousness, Mr. Daniels gives it as: "Where he is able to say he is brought as a defendant upon a record, with a large portion of which, and of the case made by which

he has no connection whatever;" or "where the plaintiff demands several matters of different natures of several defendants by the same bill."—1 Dan. Ch. Pr. §§ 385, 395; Story Eq. Pl. § 272. .

A limitation on the rule by Mr. Daniels is declared in *Kennedy's Heirs v. Kennedy's Heirs,* 2 Ala. 571, where it is stated that "defendants who have different interests in the subject-matter, if the relief granted will affect them all," may be joined.

So, in *Stone v. Knickerbocker Life Insurance Co., supra,* the limitation was held to control in bills embracing "several matters distinct in themselves, but which together make up the complainant's equity and are necessary to complete relief."

In *Dallas v. Timberlake, supra,* the bill was not multifarious. The one purpose running through the whole suit was "to obtain payment of the amount due to the county complaining, from its late tax collector, out of him and the persons who agreed to be his sureties, and out of the properties on which they gave a lien as security for such payment, * * * required as a condition upon which only the tax collector was permitted to discharge the duties of his office."

The case before us is that of a partner, as an individual, giving his daughter his property, as he had a right to do so long as it was not a fraud on his creditors. No lien was declared on the property so given, as was declared by the statute on the properties of the several sureties in *Dallas County v. Timberlake, supra.* It was not shown by the bill that Mrs. Freeman's property was subject to the debts of her father, or that its subjection was "necessary to complete relief," as declared in *Stone v. Knickerbocker Insurance Co., supra,* and *Kennedy's Heirs v. Kennedy's Heirs, supra.*

Tested by section 3095 of the Code, and by these decisions, can it be said that Dovie M. Freeman's deeds to the lands given or sought to be given by her parent, before the partnership was formed, should in this suit be canceled as fraudulent and void as to her father's copartners in the unfortunate banking partnership? Does her right to the lands grow out of the same subject-matter? Is her title founded in the same contract or transaction? Does her right relate to the same property between the same parties?

We believe that the trustees cannot, in the same bill, ask contribution and to settle the trust, and litigate the title of Mrs. Freeman to the lands in question. The trustees must first reduce the assets of the trust estate into moneys, to pay the debts. This may take separate suits in different courts, according to the facts of each case. They cannot consult their own convenience, and litigate such conflicting claims, in a bill filed to make their settlement as trustees, and for an accounting among the copartners and with the trustees.

The demurrers of Dovie M. Freeman should have been sustained. The decree of the chancery court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.