**PERFECTED CURING & STORAGE CO. v. FIRST NAT. BANK OF WINFIELD.\***
**(No. 2966.)**

(Court of Civil Appeals of Texas. Texarkana. Nov. 18, 1924. Dissenting Opinion Nov. 26, 1924. Rehearing Denied Nov. 27, 1924.)

1. Partnership ⚖➡128—Assumption of indebtedness not ordinarily within scope of partnership business; liability of member of firm assuming payment thereof stated.

Generally, assumption by a partnership of indebtedness it did not incur and for which it was not liable is not within scope of partnership business, and a member of a firm assuming payment thereof is not individually liable if he did not agree to such assumption, and is not estopped from asserting that he did not so agree.

2. Partnership ⚖➡146(1)—Member not liable on partnership note for assumed debt where expressly contracting against such liability.

Member of partnership was not liable on note executed by partnership to take up indebtedness of company whose liabilities partnership assumed in its articles of association, where by such articles member not only did not agree to become liable individually for indebtedness of such company but especially contracted against such liability.

3. Partnership ⚖➡128—Member not estopped to deny liability on note made by partnership where not within scope of its business, and payee had knowledge thereof.

Member of partnership was not estopped from denying liability on note executed by partnership to take up indebtedness of company whose liability partnership had assumed, where making of such note was not within scope of business of partnership, and payee was chargeable with knowledge thereof.

Hodges, J., dissenting.

Appeal from District Court, Titus County; R. T. Wilkinson, Judge.

Action by the First National Bank of Winfield against C. B. Cohen and others, engaged as partners under the name of Perfected Curing & Storage Company. Judgment for plaintiff, and first-named defendant appeals in name of such company. Reversed as to appealing defendant.

This was a suit by appellee as plaintiff against A. W. Emerson, D. L. Ormesher, F. E. Waldrop, J. W. Barrett, O. W. Caudle, S. L. Sowards, D. H. Morris, and appellant C. B. Cohen, who were alleged to be partners engaged in business under the name "Perfected Curing & Storage Company." It was to recover the amount of a promissory note for $2,985.35, interest, and attorney's fees dated June 16, 1920, payable August 15, 1920, to appellee's order, and purporting to have been made by the Perfected Curing & Storage Company, acting by D. L. Ormesher, its vice president, and A. W. Emerson, its treasurer.

None of the defendants except appellant Cohen filed an answer to the suit. Cohen in his answer, which was sworn to, denied that he and his codefendants were or ever had been partners; alleged that the indebtedness evidenced by the note sued upon was not indebtedness of the Perfected Curing & Storage Company, but was indebtedness of Emerson, Waldrop, and Ormesher, incurred prior to January 20, 1920, while they were engaged in business under the name "Perfected Curing & Storage System"; denied that he ever "at any time or in any manner became bound or obligated to pay any debt or demand incurred or owing by the Perfected Curing & Storage System"; alleged that the note was without consideration to him or to the storage company; and alleged, further, and at the trial proved, that prior to said January 20, 1920, Emerson, Waldrop, and Ormesher engaged in business under the name "Perfected Curing & Storage System"; that on said January 20 he associated himself with said Emerson, Waldrop, and Ormesher "for the purpose of forming a company to take over the assets and liabilities of the said Perfected Curing & Storage System, and to conduct and operate a similar business, to be known as 'Perfected Curing & Storage Company'; that the agreement between him and the said Emerson, Waldrop, and Ormesher was in writing, and contemplated, not the formation of a partnership, but the formation of a joint-stock company to be managed by trustees and without personal liability by any holder of stock therein, further than the unpaid stock subscribed by each member thereof; * * * that by the terms of said agreement the business of said Perfected Curing & Storage Company was to be managed and controlled by a board of trustees who should act under a declaration of trust, and by the terms of the said

agreement between this defendant and the said Emerson, Waldrop, and Ormesher it was specially provided that the trustees, the survivor of them, their successors, and their survivor or survivors, shall have no power to bind the shareholders or members, or either of them, personally."

Cohen further alleged in his answer that the note sued upon was executed without his knowledge or consent and "without authority from him to do so," and "in violation of and contrary to the terms and provisions of the contract so entered into between him and said Emerson, Waldrop, and Ormesher on the 20th day of January, 1920, and contrary to and without any authority vested in them, or either of them, as trustees or officers of the Perfected Curing & Storage Company, and contrary to the declaration of trust under which this defendant and the said Emerson, Waldrop, and Ormesher undertook to act for and carry on the business agreed and contracted to be carried on by and between them; * * * that in executing said note neither the said Emerson nor Ormesher acted as his agent or by his authority, and that in so executing said note they were not carrying on any business of or, in fact, acting for or in the interest of the Perfected Curing & Storage Company."

In a supplemental petition the bank alleged "that the original indebtedness for which the note sued on herein was executed was the debt of a joint-stock association organized by A. W. Emerson et al., under a declaration of trust that existed prior to the organization of the defendant, Perfected Curing & Storage Company, and the said association was doing business under the name of the Perfected Curing & Storage System; that the said Perfected Curing & Storage System owned a lot of real and personal property of considerable value, and it was dissolved and the members thereof reorganized the same, joined by Chas. B. Cohen, who with A. W. Emerson, David Ormesher, and F. E. Waldrop were trustees and the name of such new organization is Perfected Curing & Storage Company organized under a declaration of trust for the purpose of taking over the entire assets together with the liabilities of the business of the Perfected Curing & Storage System, and to conduct and operate a similar business to be known as the Perfected Curing & Storage Company. The said Perfected Curing & Storage Company did take over all of the property of the Perfected Curing & Storage System, and as consideration therefor did assume the payment of the plaintiff's indebtedness, and thereafter in pursuance of said agreement on June 16, 1920, the said Perfected Curing & Storage Company, acting by and through David Ormesher, vice president, and A. W. Emerson, treasurer, executed the note sued on herein as the lawfully authorized agents and partners of the said

266 S.W.—55

Chas. B. Cohen and other associates, and thereby the said partnership and each partner became bound and liable to pay to plaintiff the said sum of money in the said note mentioned according to its reading, tenor, and effect."

The trial was to the court without a jury. It appeared without dispute in the testimony that the indebtedness evidenced by the note sued upon originally was indebtedness of the Perfected Curing & Storage System, a partnership composed of A. W. Emerson, D. L. Ormesher, and F. E. Waldrop, and was never indebtedness of the Perfected Curing & Storage Company, unless it became such by force of provisions in the "articles of association," "declaration of trust," or "by-laws" evidencing the creation, etc., of said storage company, or by force of the contract evidenced by said note. It appeared from the articles of association, declaration of trust and by-laws referred to that it was the intention of said Emerson, Ormesher, Waldrop, and appellant at the time the storage company was created, acquiesced in by O. W. Caudle and others when they afterwards became members of the company, to form "an unincorporated joint-stock company," to be known as the "Perfected Curing & Storage Company," "to take over the entire assets together with the liabilities of the business of the Perfected Curing & Storage System." The business of the storage company was to be transacted by trustees. It was stipulated that "all funds and property of the (storage) company of every character and description shall stand primarily charged with the burden of paying any claim or money demand which may be established on account of the operations and business of the company, whether founded upon contract or tort, to the end that the members of the company may be protected from personal liability on account thereof," and it was declared that the trustees should "have no power to bind the shareholders or members, or either of them, personally," and that said trustees "in every written contract they may enter into relating to the business of the company or affecting the company's property" should provide that the person or corporation contracting with them "shall look only to the funds and property, legal and equitable, of the company for the performance thereof in all things, and for the payment of any obligation, debt, damage, demand, judgment or decree, or of any money that may become due and payable in any way by reason thereof; and neither or any of the trustees, nor the shareholders, present or future, shall be personally liable therefor, or for any debt incurred, or other obligation, or engagement or contract made or entered into by the trustees, or any officer, agent, or employee acting under them on behalf of the company."

It was provided that "all notes or other

evidence of indebtedness shall be countersigned by the president or vice president." The note sued upon was signed as follows: "Perfected Curing & Storage Co., A. W. Emerson, Treas., David L. Ormesher, V. P."

It did not contain a provision in any way limiting the liability of the company or its members or any of them.

The trial resulted in a judgment in favor of the bank against all the defendants, as a partnership and as individuals, for the amount of the note sued upon. The appeal was prosecuted by Cohen alone.

King, Mahaffey & Wheeler, of Texarkana, for appellant.

J. A. Ward, of Mt. Pleasant, for appellee.

WILLSON, C. J. (after stating the facts as above). It is not contended here (and if it was the contention would be overruled) that the Perfected Curing & Storage Company was not, in law, a partnership, nor that its members were not, as partners, individually liable for obligations it incurred in transactions within the scope of the business it was engaged in. The contention (as we understand it) is that the assumption by the storage company of indebtedness of the storage system to the bank was not such a transaction; and that, because it was not, it was incumbent on the bank, before it was entitled to the judgment it obtained, so far as it was against appellant, to show, and that it did not, that he agreed to be bound individually for the payment of said indebtedness of the storage system.

[1] Undoubtedly it is true, generally, that the assumption by a partnership of indebtedness it did not incur and for which it was not liable is not within the scope of partnership business; and undoubtedly it is also true that a member of a firm which undertakes to assume the payment of such indebtedness is not individually liable on such undertaking if he did not agree to such assumption and is not estopped from asserting he did not so agree. 20 R. C. L. 985; 30 Cyc. 614; Baptist Book Concern v. Carswell (Tex. Civ. App.) 46 S. W. 858; Oliver v. Moore (Tex. Civ. App.) 43 S. W. 812; Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, Ann. Cas. 1916E, 446; note to Dean v. Collins, 9 L. R. A. (N. S.) 57; Webb v. Butler, 192 Ala. 287, 68 So. 369.

[2, 3] The testimony relied upon to show that appellant agreed to become and be liable individually for indebtedness of the storage system, or if he did not so agree, was estopped from asserting the fact, consisted alone of the note sued upon and the provision in the "articles of association" between him and Emerson, Waldrop, and Ormesher that the storage company should assume the liabilities of the storage system. We think

that testimony would have warranted the judgment rendered but for the provision in said articles of association that persons or corporations contracting with the storage company should look only to its funds and property for the fulfillment of their contracts, and that none of the members of the association should be personally liable for any debt "or other obligation or engagement or contract made or entered into by the trustees or any officer" of the storage company.

It is plain, we think, when the provisions in the articles of association referred to are considered together, that it appeared appellant not only did not agree to become and be liable individually for the indebtedness of the storage system, but that he expressly contracted against such liability. The question is, Was he nevertheless liable to the bank as determined by the judgment? We do not think so. If he was, it must have been because he was estopped by the act of the storage company in making the note sued upon from denying that he was so liable. Doubtless he would have been estopped by that act had the making of the note been within the scope of the business of the storage company. But it was not, and we think the bank was chargeable with knowledge of the fact that it was not. If the bank was chargeable with such knowledge, then it was not entitled to claim an estoppel against appellant merely because he was a member of the storage company partnership, for it had no right when it took the note sued upon to assume that he had agreed to be liable individually for the payment of the indebtedness of the storage company to the bank. Webb v. Butler, 192 Ala. 287, 68 So. 369; Meinhard v. Folsom, 3 Ga. App. 251, 59 S. E. 830; Dean v. Collins, 9 L. R. A. (N. S.) note pp. 57, 58.

Appellee argues in support of the judgment that the storage company had a right to buy the property of the storage system, and as a consideration for the sale to it to unconditionally assume the payment of the indebtedness of the storage system. We think there is no doubt it had such a right. But it did not exercise it. If the transaction between the storage company and the storage system should be treated as a sale by the latter to the former in which the storage company assumed to pay indebtedness of the storage system, plainly the undertaking of the storage company was on the condition that the individuals composing it should not be personally liable for the payment of the indebtedness assumed.

We think the judgment was not warranted by the testimony so far as it was against appellant. It will be reversed in that respect, and judgment will be here rendered that the bank take nothing as against him. The judgment will not be otherwise disturbed.

HODGES, J. (dissenting). While there was an apparent effort to organize the Perfected Curing & Storage Company as a common-law trust, it is conceded that both it and the former joint-stock company, known as the Perfected Curing & Storage System, were general partnerships. That being true, the partners were, by operation of law, jointly and severally liable for all the valid partnership debts. In order to escape that legal personal liability in this instance, it devolved upon Cohen, the appellant, to prove either that under the provisions of the partnership agreement he was not to be held personally liable beyond his interest in the partnership assets, and that the appellee bank had notice of that limitation at the time the debt was created, or that the note sued on was not a partnership obligation binding on his company. While the record shows a stipulation against personal liability in that agreement, there is no evidence to authorize a finding that the bank had any notice of that limitation. But, even if there was evidence enough to support a finding of such notice, it was not sufficient to require such a finding. The judgment of the trial court involves a finding against notice. In the opinion of the majority reversing the judgment as to Cohen it is not contended that there was notice of that special limitation upon Cohen's liability.

The next question then is, Was this obligation binding on the Perfected Curing & Storage Company as a partnership? Or, to state the question in another form, had the Perfected Curing & Storage Company, of which Cohen was a member, agreed to pay that debt? Caudle, who represented the appellee bank in the transaction, testified:

"I met Mr. Cohen several times in Dallas. This note that has been offered in evidence was prepared by me, and I mailed it to the Perfected Curing & Storage Company at Dallas. This note was a renewal note, renewing another note that was due at the time. The old note which this note was a renewal of was given prior to January, 1921. It was by the Perfected Curing & Storage System. * * * When the old note became due I had conversations with all three of these parties about the payment—with Mr. Cohen, Mr. Emerson, and Mr. Waldrop. That was prior to the renewal when I talked to Mr. Cohen in his office in Dallas about the old note, and he told me they were making arrangements to take care of their old indebtedness, and if we would wait a short time we would get our money in full."

Cohen testified in part as follows:

"I went into the organization (the Perfected Curing & Storage Company) with the distinct understanding that there was to be no personal liability against me either for the liabilities of the old organization or for the new company. For all the stock I took in the new company I paid for it in cash and in full. I don't know whether I took the stock out before this note was executed that is now sued on or not, but I took my stock when the new company was first organized. I never agreed to become personally liable for the debts of the Perfected Curing & Storage System. I never agreed to any more than is stated in the articles of association of the new company. I never at any time authorized Emerson, Waldrop, or Ormesher to act as my agent to create any personal liability with reference to this note or any other obligation."

The articles of association of the Perfected Curing & Storage Company contain the following provision:

"Whereas Chas. B. Cohen, of Dallas, Texas, is desirous of associating himself with the said Emerson, Waldrop, and Ormesher for the formation of a company to take over the entire assets, together with the liabilities of the business of the Perfected Curing & Storage System, and to conduct and operate a similar business to be known as Perfected Curing & Storage Company:

"The first board of trustees shall and does consist of Chas. B. Cohen, A. W. Emerson, D. L. Ormesher, F. E. Waldrop, who shall continue in office for one year from date hereof and until their successors are elected as herein provided."

Those articles were signed on January 20, 1920. At that time the appellee held a note against the Perfected Curing & Storage System given for borrowed money. The note sued on was executed by the proper officials of the new company on the 16th day of June, 1920, and was understood by Cohen and his partners to be a renewal of the indebtedness of the old company which the new company had expressly agreed to assume.

The law is well settled that a new partner is not liable for the debts of the old partnership, unless he in some form agrees to become liable. His liability will then depend upon the terms and conditions of the contract by which he binds himself to pay the debts of the former partnership, and not upon his legal relations as a partner. Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, Ann. Cas. 1916E, 446. If this were a suit upon the old note of the Perfected Curing & Storage System, and the personal liability of Cohen rested alone upon the contract embraced in the articles of agreement, in which he limited his liability to his interest in the partnership assets, undoubtedly he would have the right to hold the bank to the terms of that agreement. But that is not the legal situation presented by this record. This suit is upon a note executed by the firm of which Cohen was a member, and upon its face binds all of the partners jointly and severally for its payment. It was a plain and unconditional contract to pay a specified sum of money. That is the contract upon which the bank now relies to hold Cohen liable as a partner. The articles of association constituted a contract between the partners with which the bank had no connection, and of which it had no notice. That note can now be impeached by Cohen only upon the ground that it is without consideration, or that its execution was unau-

thorized. That the new note did rest upon a valid consideration, the old debt, is not disputed. If Cohen assented to its execution in any form, he is bound, regardless of whether he received any personal benefit from the transaction or not. It is sufficient if the contract to pay the amount of the note is based upon a legal consideration, even if only one of the obligors received the benefits. Nor would it be different if the bank officials knew that Cohen was to get no personal benefit from the contract which his firm had made.

It is equally conclusive that the officers of the company were authorized to execute this renewal note. The articles of association themselves stipulate for the assumption of this debt by the new firm. The testimony of both Caudle and Cohen justifies the inference that Cohen understood that his firm was to be so bound.

The legal effect of these articles, when offered as proof of authority on the part of the officers of the firm to execute the note involved, is entirely different from what it would be when offered as evidence of Cohen's assumption of liability. If the articles had formed the only basis of Cohen's liability to the bank, the latter would have therein constructive notice, at least, of all the conditions attending his assumption of the debt. But such notice would not be implied when the articles are used only to combat the plea interposed by Cohen on the trial.

This record contains no proof that the appellee had notice of the limitations of liability upon which Cohen relied. In taking the note of the new firm for the debt of the old we have a case of novation. 30 Cyc. 615, and cases cited. That such a novation was contemplated in this case clearly appears from the testimony of Caudle and Cohen himself. I think the judgment should be affirmed as to all the parties defendant.