(77 South. 706)

BIRMINGHAM PACKING CO. v. BIRMINGHAM BELT R. CO. (6 Div. 259.)

(Supreme Court of Alabama. Jan. 17, 1918.)

RAILROADS ☞82(3)—RIGHT OF WAY—CONVEYANCE—BREACH.

A grantor who conveyed land to a railroad company under an agreement that he should receive switching service at a special rate is not, the railroad company after the passage of Act Feb. 23, 1907 (Code 1907, § 5531), prohibiting discrimination, having refused to furnish such service, entitled to a cancellation of his deed, the agreement as to the special rate not constituting a condition subsequent, breach of which would work a forfeiture of the estate.

Appeal from Chancery Court, Jefferson County; A. H. Benners, Chancellor.

Bill by the Birmingham Packing Company against the Birmingham Belt Railroad Company. From a decree sustaining demurrers to the bill, complainant appeals. Affirmed.

The bill to which demurrers were sustained was in substance as follows: Complainant is a corporation, with its place of business in Birmingham, Ala., engaged in the packing house and cold storage business, in the prosecution of which it is constantly receiving carload lots of cattle, hogs, and other animals for slaughter, together with various other kinds of supplies not connected with its said plant; that the respondent, Birmingham Belt Railroad Company, a corporation with its place of business in Birmingham, Ala., owns and operates the Belt Railroad in Birmingham over which it transports freight in carload lots to and from various railroads entering the city, and to and from various manufacturing enterprises in and near the city, for a consideration usually fixed at so much per car by the defendant; the defendant, however, owning no cars of its own. Complainant is successor to all the rights and property of Phillips and Ungerman, a partnership, who, on December 30, 1904, were engaged in a similar business which they had been conducting for a number of years.

Respondent desired to extend its railroad to its main line and yard at East Thomas, and to secure for itself the movement of freight to and from the plant of said Phillips and Ungerman, as well as other shippers similarly situated. Respondent entered into negotiations with Phillips and Ungerman whereby it acquired a strip of land over which to build its tracks, about 80 feet wide and 215 feet long, upon the consideration, among other things, of an expressed agreement with Phillips and Ungerman to transport and deliver loaded and empty cars at the fixed price of $3 per car for said firm. Said negotiations culminated in a written contract (Exhibit A) and a supplemental contract (Exhibit B) made December 30, 1904, which contracts have been duly assigned and transferred to the complainant; that contemporaneously therewith, and as a part consideration of said contract, and in consideration of the advantages accruing to them from the contract, Phillips and Ungerman executed a deed conveying to the respondent the following described land: (Here follows a particular description of the land conveyed, aggregating $31/100$ of an acre.) The deed re-

cites a consideration of $1, is a warranty deed, and is made Exhibit C of the bill.

Exhibit A above referred to conveys a strip of land containing $8/100$ of an acre for a right of way, and another strip of land containing $10/100$ of an acre for a right of way, upon the consideration that the respondent immediately construct a railroad track thereon and maintain the same for the purpose of transporting cars to and from the plant, with the further understanding and agreement that said track should be removed upon 90 days' notice being given by the grantor.

Exhibit B is a supplemental agreement or contract entered into on the same day, December 30, 1904, and refers to the agreement—Exhibit A making it a part thereof—and recites that in consideration of the covenants of the parties it (respondent) will transport and deliver cars of live stock, freight, and merchandise, whether shipped by or to said parties of the first part, as long as they may operate said plant at a price not exceeding $3 per car, and it is further agreed that such contract may be assigned by the parties to a corporation to be organized, and that the assignee shall succeed to all the rights of the parties of the first part. The bill then alleges that said contracts were of great value to complainant, and that the respondent carried out the terms of the contract, charging the fixed rate of $3 per car, until February 26, 1907, at which time, and ever since, respondent required the payment of $5 per car for the transportation of complainant's freight, which charge complainant was compelled to pay; that complainant instituted a suit in the city court of Birmingham against respondent for breach of contract, and as a defense thereto respondent pleaded in substance as follows: That the amount claimed was for an overcharge due from defendant by reason of the fact that from and after February 23, 1907, defendant, a common carrier engaged in switching cars in and near Birmingham, charged the sum of $5 per car instead of $3 per car; that $3 per car had been agreed upon by plaintiff and defendant as a special rate, which was $2 less than defendant's regular rate established by it some time prior to February 23, 1907, and in full force and effect continuously thereafter; that defendant charged all shippers the regular rate of $5 per car; that the special rate contract was entered into in 1904, and that after the passage of the act of the Legislature of Alabama, approved February 23, 1907, and incorporated in the Code of 1907 as section 5531, forbidding discrimination, defendant charged and received from plaintiff, and all other shippers, $5 per car—that being the legal and established rate for such services; and that defendant in pursuance of its regular, legal, and established rate caused to be filed with the Alabama Railroad Commission, and with the Interstate Commerce Commission, its rate showing and declaring the regular and uniform rate for their services involved in said charges at $5 per car, and that the said rate of $5 became and was the lawful rate for said services, and superseded any special or private rate theretofore charged or existing. The bill then alleged that on March 4, 1914, a judgment was rendered in said suit sustaining defendant's pleas. It is then averred that the pleas show that respondent voluntarily fixed said rate at $5 per car, and filed the same with the commission, and seeks to excuse itself by relying upon section 5531, Code 1907, which prohibits discrimination or any special rate; and that, as respondent has voluntarily fixed such rate and breached the contract, complainant is entitled to have said deed declared null and void (Exhibit C to the bill), and title to said land vested in complainant.

The special prayer is for a cancellation of the deed, and the bill also contains a general prayer for such other, further, or different relief in the premises as it may be entitled to in equity and good conscience. The bill was demurred to upon the grounds that it was without equity; that it showed upon its face that respondent complied with its obligation as long as compliance therewith was legal, and that there has been a part performance by respondent, and complainant is not entitled to a reconveyance of the premises; that the contract was entered into by the parties subject to the police power of the state, compliance with which cannot be relied on as a breach of contract; that the contract applies to interstate commerce as well as to intrastate commerce, and that complainant could not, and cannot, accept the special rate of $3 per car without violating the laws of the state and of the United States; that the contract fixing rates should be construed as requiring respondent to switch cars at a charge of $3 per car so long as such charge could be made consistently with the law.

There were additional assignments of demurrer taking the point that there was other consideration to complainant or its predecessors aside from the $3 rate, such as an extension of service to complainant's plant, and that no right is shown to impeach the sufficiency of the deed because of the incidental consideration arising from the special rate now prohibited by law; that the conclusion, as averred in the bill, that the rate of $5 was a voluntary rate, is not borne out by the facts alleged; and that the matters set up in the bill are res adjudicata as between complainant and respondent.

The demurrers to the bill were sustained, and from this decree complainant prosecutes this appeal.

A. C. & H. R. Howze and A. Latady, all of Birmingham, for appellant. Forney Johnston and W. R. C. Cocke, both of Birmingham, for appellee.

GARDNER, J. The bill showed that complainant's predecessors (whose rights and interests in the contracts referred to in the statement of the case are owned by it) in consideration of the construction and operation by the respondent of its railroad to their plant, and the agreement in writing fixing a charge of $3 per car for transporting and delivering the same to their (former) said plant, executed a deed to respondent conveying with warranty of title 31/100 of an acre, more or less; that this agreement was complied with on the part of respondent, and the rate of $3 per car was charged from the time of the contract in 1904 until February 23, 1907, when the Legislature of Alabama enacted another law (section 5531 of the Code of 1907) prohibiting discrimination under penalty. As we construe the bill, it also discloses that the regular rate charged to all shippers was $5 per car, which was the rate filed and published with the Alabama Railroad Commission, and also with the Interstate Commerce Commission, and which, it must be assumed, was a reasonable rate, being the established legal rate for all shippers; and that the $3 rate per car was a special rate to complainant's predecessors only. It also appears that respondent declined to abide by the $3 rate agreement upon the sole ground that, as understood by respondent, it was forbidden to do so by law. It is not questioned by complainant's counsel that the parties entered into the contract subject to the police power of the state, but it is insisted that as the respondent has received the full benefit of the agreement, and has acquired the property of complainant's predecessors, and that as the contract has been breached and incapable of enforcement the deed (Exhibit U) should be canceled and annulled. The special prayer is for a cancellation of said deed.

To work a destruction or cancellation of a deed under the facts alleged, it must appear that the agreement as to the special rate constituted a condition subsequent, the breach of which would work a forfeiture of the estate. The question of condition subsequent in a deed was considered by this court in the recent case of S. A. L. Ry. Co. v. Anniston Mfg. Co., 186 Ala. 264, 65 South. 187, and is exhaustively treated in the note to Ecroyd v. Coggeshall, 79 Am. St. Rep. 741. See, also, note to Davis v. Davis, 130 Am. St. Rep. 1035; Eastman v. Parkinson, 133 Wis. 375, 113 N. W. 649, 13 L. R. A. (N. S.) 725; 6 Pom. Eq. Jur. § 686. We enter into no discussion of that doctrine here. It is fully discussed in the above-cited authorities, and a further discussion here would be but a reiteration of what is therein stated. We are of the opinion that a reference to these cases will sufficiently disclose that the averments of the bill in the instant case, with the exhibits thereto, clearly do not bring the case within the influence of that doctrine. It therefore appears that complainant is not entitled to the special relief prayed, seeking a cancellation of the deed.

In their supplemental brief, counsel for appellant place much reliance upon the case of N. Y. Cent. etc., Ry. v. Gray, 239 U. S. 583, 36 Sup. Ct. 176, 60 L. Ed. 451. There the court had for consideration a contract between Gray and the railroad by which the former was to be paid $150 in cash for certain services—the services being valued at $750—and the balance in transportation. The contract was complied with until the act of Congress was passed prohibiting any special rates or fares to individuals for transportation, and, after the passage of this act, the railroad declined to carry out the agreement because in violation of the federal law. Gray brought suit for the unpaid balance of the agreed price, and recovered judgment. The court held that the railroad acted in accordance with the law in declining further transportation, adding, however, the following:

"But there is nothing in the act to prevent or relieve a carrier from paying in money for something of value which it had long before received under a contract valid when made, even though the contract provided for payment in transportation which the passage of the act rendered thereafter illegal."

This case, however, is not, in our opinion, authority in support of the equity of the bill here under review, wherein cancellation of the deed is sought, but rather indicating that the remedy is in an action at law. Whether complainant has an adequate remedy at law, and, if so whether the same is res adjudicata, need not be here determined. We are of the opinion the assignments of demurrer taking the point that the bill discloses no right or equity to impeach the conveyance or to have complainant entitled to a reconveyance is well taken, and the decree sustaining the demurrer will be here affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.