## LOWERY v. MAY. (1 Div. 341.)

(Supreme Court of Alabama. March 19, 1925. Rehearing Denied April 23, 1925.)

**1. Contracts ⬤=1—"Covenant" defined.**

A covenant is an agreement between parties to do or not to do a particular act, or whereby either promises that something is already done or shall be done afterwards, or a stipulation as to nonperformance of some specified duty, or stipulation as to truth of certain facts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Covenant.]

---

**2. Covenants ⊚═26 — "Dependent covenants" defined.**

Covenants which are conditions and dependent on each other require prior performance of some act, or existence of specified status or condition, and until that condition is performed or given status exists, other party is not liable to action on his covenant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Dependent Covenant.]

**3. Contracts ⊚═225—Mutual conditions to be performed at same time.**

Mutual conditions are to be performed at same time or as agreed on by the parties.

**4. Covenants ⊚═26—"Mutual and independent covenants" do not go to whole consideration on both sides, but only to a part.**

Mutual and independent covenants are such as do not go to whole consideration on both sides, but only to a part, and where separate actions lie for breaches on either side to recover damages for injury sustained by breach, and breach of covenant by other party is no defense.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Covenant.]

**5. Deeds ⊚═155—"Condition subsequent" defined.**

A condition subsequent is created by a conveyance wherein an estate vests on condition, and may thereafter be defeated by nonperformance of such condition, or by happening of an event stipulated against, and when act is done or event happens, it defeats an estate already vested.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Condition Subsequent.]

**6. Contracts ⊚═173—Covenants ⊚═26—Dependence or independence of covenants determined from meaning of parties, having due regard to whole instrument.**

Dependence or independence of covenants in contracts and conveyances are to be ascertained from evident sense and meaning of parties, having due regard to whole instrument, and however transposed such provisions may be, their precedency must depend on order of time in which intent of transaction requires their performance.

**7. Contracts ⊚═147(1)—Deeds ⊚═93—Expressed intent of parties given application if not contrary to law.**

In construction of contracts and conveyances, expressed intent of parties, if not contrary to law, is to be given application.

**8. Contracts ⊚═143—Deeds ⊚═90—Ambiguity requires rules of construction to be applied; deed of bargain and sale construed most strongly against grantor.**

When language in a contract or conveyance is ambiguous or contradictory, resort is had to arbitrary rules of construction, such as that a deed of bargain and sale for valuable consideration is to be construed most strongly against grantor.

**9. Contracts ⊚═162—Deeds ⊚═97—Inconsistencies between clauses or conditions resolved in favor of first clause.**

Inconsistencies between clauses or conditions which cannot be reconciled must be resolved in favor of first clause.

**10. Deeds ⊚═97 — Apparent conflict between granting and habendum clauses harmonized if possible, but, if not, granting clause controls.**

If there is apparent conflict between granting and habendum clauses of a deed, they are to be harmonized, if possible, with consistent and expressed intent of parties, and if they cannot be reconciled, granting clause will control.

**11. Deeds ⊚═97—Habendum cannot enlarge estate granted in premises of deed.**

The habendum or covenants following cannot enlarge estate granted in premises of deed, but if there is a question of extent of ownership in estate granted, resort may be had to these clauses.

**12. Deeds ⊚═155—Conditions subsequent forfeiting estates not favored.**

Conditions subsequent, forfeiting estates, are not favored unless intent to create an estate on condition is clearly and unequivocally indicated.

**13. Deeds ⊚═144(1) — Condition subsequent must be clearly and unequivocally expressed.**

Though conditions subsequent may be created without use of technical language, they must be clearly and unequivocally expressed.

**14. Deeds ⊚═145—Clause construed as a covenant rather than a condition subsequent.**

If it is doubtful whether a clause is a mere covenant or a condition subsequent, courts will construe it, if possible, to avoid forfeiture of a vested estate, and will hold it to be a covenant rather than a condition subsequent.

**15. Deeds ⊚═90 — Effect given to granting clause where without ambiguity.**

If there is no ambiguity in granting clause of a deed as to nature and extent of what was intended to be conveyed, such effect should be given without necessity of resorting to arbitrary rules.

**16. Contracts ⊚═154—Presumed that parties intended to make reasonable contract.**

It is presumed that parties intended to make a reasonable and rational contract.

**17. Contracts ⊚═154—Unconscionable results avoided in construing contract.**

If a contract is susceptible of two constructions, unconscionable results are to be avoided.

**18. Logs and logging ⊚═3(11)—Omission of clause providing for re-entry or avoiding of deed considered in determining whether condition subsequent or covenant intended.**

Omission of any clause in deed providing for re-entry by grantor for conditions broken, or declaring instrument void, are to be considered in determining whether there was an intent of parties to create a condition for forfeiture, and not a mere covenant to remove timber within time fixed.

⊚═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**19. Deeds ⬅49—Deed not witnessed or acknowledged ineffectual to convey title, but will operate as agreement to convey.**

A deed which is not witnessed or acknowledged, as required by Code 1923, § 6838, is ineffectual as a conveyance of legal title, but will operate in court of equity as an agreement to convey.

**20. Logs and logging ⬅3(7)—Changed conditions and respective interests of parties considered in construing contract conveying right to cut and remove timber.**

In construing a contract conveying right to cut and remove timber, court will take account of changed conditions and respective interests of parties in subject of contract to convey.

**21. Logs and logging ⬅3(9)—Restrictions on right to cut and remove timber held covenants and not condition subsequent.**

Under contract whereby vendor granted purchaser exclusive right to cut and remove timber on terms and conditions stated, and providing that after purchaser had cut and removed from any subdivision "any timber of any kind which he is authorized to cut and remove, he shall not thereafter cut or remove any other timber of same kind from said subdivision," and further, that agreement shall be terminated in event purchaser violates any conditions and covenants on his part, *held* that such provisions were not intended to operate as conditions subsequent, nor as restriction on right to cut timber sold, but a mere covenant requiring purchaser to cut such subdivisions clean of species of trees being cut, and prohibiting purchaser from returning to cut and remove any timber of same kind from such subdivision, and hence purchaser may enter and cut timber as often as there are specific classifications of timbers.

**22. Equity ⬅214 — Sufficiency of cross-bill may be tested by demurrer.**

The sufficiency of a cross-bill may be tested by demurrer.

**23. Equity ⬅195—Defendant may by cross-bill bring proper parties before court, in order that full and complete justice may be done.**

Under maxim that courts of equity "delight to do justice, and not by halves," a defendant, by cross-bill, may bring proper parties before court in order that full and complete justice in the premises be done as to the subject-matter.

**24. Equity ⬅147 — Rule of multifariousness stated.**

The rule of multifariousness as to bills in equity is not that all parties have an interest in all matters in controversy, but it is sufficient if each has an interest in some of matters involved, and they are connected with the others, and *common interest must be in subject-matter*, and relief sought must be to determine rights of all parties relating thereto.

**25. Equity ⬅195—Cross-bill must be germane to original bill and should not bring in foreign matter.**

The purpose of a cross-bill is defensive in nature, and its subject and purpose must be germane to original bill, and should not bring in utterly foreign matter unless within well recognized exceptions.

**26. Equity ⬅195—Cross-bill which is inconsistent with answer cannot be entertained.**

A cross-bill that departs from and is inconsistent with the answer cannot be entertained.

**27. Equity ⬅202—Sufficiency of cross-bill determined with reference to allegation of original bill.**

The sufficiency of response by cross-bill must be determined with reference to allegation of original bill.

**28. Equity ⬅202—Cross-bill held subject to demurrer for seeking relief inconsistent with an answer to original bill.**

Where complainant attacked title granted by another to defendant's vendor, which title such vendor had warranted to defendant, as to such attack, defendant by cross-bill was entitled to bring in his vendor as a party in order to determine nature and extent of such title, but defendant could not in such cross-bill seek relief by way of damages resulting from his vendor's breach of warranty, in case such title was held defective, as such relief was inconsistent with answer to original bill, and hence was subject to demurrer.

## On Rehearing.

**29. Logs and logging ⬅3(8)—Covenant prohibiting purchaser from cutting timber from lands once cut over held not one running with the land.**

A covenant in a deed granting right to cut and remove timber, providing that after purchaser had cut and removed from any subdivision timber of a certain kind, he could not thereafter cut and remove any other timber of same kind from such subdivision, was not a covenant running with the land, but purpose was to define and preserve to grantor future growth of timber.

**30. Covenants ⬅104 — Injunction ⬅57 — Remedy for breach of covenant not running with land is by action at law where adequate, and, where inadequate, status quo preserved by restraining processes of equity court.**

The remedy for a breach of covenant which does not run with the land is by an action at law when same is adequate, and, when remedy at law is inadequate by reason of threatened breach resulting in irreparable injury, status quo or subject-matter may be preserved by court of equity and its restraining processes.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Bill in equity by Ben May against H. G. Lowery and George M. Rosengrant, for injunction and accounting, and cross-bill by H. G. Lowery. From a decree overruling demurrer to the original bill and sustaining demurrer to the cross-bill, respondent (cross-complainant) Lowery appeals. Affirmed in part, in part reversed and remanded.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Harry T. Smith & Caffey, of Mobile, for appellant.

Paragraph 10 of the contract should be construed to prohibit a recutting only after all timber granted in a subdivision has been cut. Watson v. Gross, 112 Mo. App. 615, 87 S. W. 104; Moss v. Hunter, 188 Mo. App. 391, 174 S. W. 212; Buskirk v. Peck, 57 W. Va. 360, 50 S. E. 432; 3 C. J. 231; 2 A. & E. Ency. Law, 414; Bouvier's Law Dict. "Any;" Rutland v. Emanuel, 202 Ala. 269, 80 So. 107. Courts will not construe a provision of a contract so as to make it work a forfeiture, if the language will bear any other reasonable construction. Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 So. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; Vizard v. Robinson, 181 Ala. 349, 61 So. 959; Advance Veneer Co. v. Hornaday, 49 Ind. App. 83, 96 N. E. 784; Hinton v. Vinson, 180 N. C. 393, 104 S. E. 897. Equity will never enforce oppressive or inequitable provisions of a contract. McBryde v. Sayre, 86 Ala. 458, 5 So. 791, 3 L. R. A. 861; Carlisle v. Carlisle, 77 Ala. 339; Sherman v. Sherman, 190 Ala. 446, 67 So. 255; Derrick v. Monette, 73 Ala. 75; Thompson v. Jones (Ala. Sup.) 39 So. 983; 1 Pom. Eq. Jur. (4th Ed.) § 385. The words used in the first instrument were sufficient to pass title to the timber. Brown v. Bishop, 105 Me. 272, 74 A. 724; Uhl v. Ohio R. Co., 51 W. Va. 106, 41 S. E. 340; Chapman v. Charter, 46 W. Va. 769, 34 S. E. 768; Brodback v. Morsbach, 38 Wash. 72, 80 P. 275; J. Neils Lbr. Co. v. Hines, 93 Minn. 505, 101 N. W. 959; Dennis Simmons L. Co. v. Corey, 140 N. C. 462, 53 S. E. 300, 6 L. R. A. (N. S.) 468. The title to the timber having passed cannot be forfeited under such a provision; it will at most be construed as a covenant and not as a condition subsequent. Zimmerman Mfg. v. Daffin, supra; De Goosh v. Baldwin, 85 Vt. 312, 82 A. 182; Hinton v. Vinson, 180 N. C. 393, 104 S. E. 897; Keystone L. Co. v. Brooks, 65 W. Va. 512, 64 S. E. 614. Complainant is always a proper party to a cross-bill by one defendant against another. 21 C. J. 505; 6 Std. Ency. Proc. 272; Weaver v. Alter, 29 Fed. Cas. p. 486, No. 17,308; Story's Eq. Pl. (10th Ed.) § 392. Courts of equity delight to do justice and not by halves. O'Neal v. Cooper, 191 Ala. 182, 67 So. 689.

Smiths, Young, Leigh & Johnson, of Mobile, for appellee.

Every demurrer must specify the grounds relied on. Code 1923, § 6253; Bright v. Wynn, 210 Ala. 194, 97 So. 689; Murphy v. Bank, 210 Ala. 375, 98 So. 288; Sou. Indemnity Co. v. Hoffman, 16 Ala. App. 274, 77 So. 424. A contract authorizing the cutting of timber of a given dimension means the dimension on the date of making the contract. Miller-Brent L. Co. v. Dillard, 201 Ala. 18, 75 So. 308; Wright v. Bentley L. Co., 186

Ala. 617, 65 So. 358; Jasper L. Co. v. Manchester Sawmills, 209 Ala. 446, 96 So. 417. Appellant's construction of the limiting clauses is not permissible. Allums v. Allums, 208 Ala. 369, 94 So. 296; Ashley v. Cathcart, 159 Ala. 480, 49 So. 75; Mason v. Ala. Ir. Co., 73 Ala. 270. The court takes judicial knowledge of what is a government subdivision. Caudle v. Comm. Court, 144 Ala. 503, 39 So. 307; Ledbetter v. Borland, 128 Ala. 418, 29 So. 579; McMillan v. Aiken, 205 Ala. 35, 88 So. 135. The granting clause is limited by other terms and conditions upon which it is made. Slaughter v. Hall, 201 Ala. 212, 77 So. 738. The grant of a right to cut does not vest title to timber. Gibbs v. Wright, 5 Ala. App. 486, 57 So. 258. A contract not witnessed does not vest title. Code 1923, § 6838. Relief cannot be granted under a cross-bill which denies the allegations under which it seeks such relief. Harton v. Little, 166 Ala. 340, 51 So. 974; Hatchett v. Blanton, 72 Ala. 423.

THOMAS, J. The appeal is from the rulings on demurrer of defendant, Lowery, to the bill as amended, and the ruling on complainant's demurrer to the cross-bill of Lowery.

The title to the real property was originally in Milner. The defendants lay their prior rights under him through mesne conveyances or contracts to convey. Thereafter complainant purchased the fee from Milner, sought to enjoin Lowery from removing merchantable timber from certain of said lands made the subject of contract between Milner and Rosengrant. The legal effect and intention of the parties, indicated in the conveyance and contract to convey from Milner to Rosengrant, and by mesne conveyances to Lowery, must be declared before the quantum of estate thereafter conveyed by Milner to May can be determined.

[1-5] It is necessary that we have clearly in mind the definitions of covenants and conditions ofttimes contained in conveyances or contracts. A covenant is an agreement duly made between the parties to do or not to do a particular act, or whereby either doth promise to the other that something is done already or shall be done afterwards, or a stipulation as to the nonperformance of some specified duty, or stipulation as to the truth of certain facts. It should be further said concerning the conditions and covenants, that these are generally classified as "dependent and concurrent," "mutual and independent." (1) Covenants which are "conditions and dependent" on each other require the prior performance of some act, or existence of the specified status or condition, and until that condition is performed or a given status exists, the other party is not liable to an action on his covenant. Bailey v. White, 3 Ala. 330; Wheeler v. Cleveland, 170 Ala.

426, 433, 54 So. 277; McCormick v. Badham, 191 Ala. 339, 67 So. 609; National Surety Co. v. City of Huntsville, 192 Ala. 82, 68 So. 373; Home Guano Co. v. International Agr. Asso., 204 Ala. 274, 85 So. 713; J. C. Lysle Milling Co. v. North Alabama Gro. Co., 201 Ala. 222, 77 So. 748; Mobile Elec. Co. v. Nelson, 209 Ala. 554, 96 So. 713. (2) Mutual conditions are to be performed at the same time or as agreed upon by the parties. Jones v. Barkley, 2 Dougl. 659, 665; Wheeler v. Cleveland, supra; Lauderdale Power Co. v. Perry, 202 Ala. 394, 80 So. 476; McCormick v. Badham, 191 Ala. 339, 67 So. 609; Bailey v. White, supra; Boone v. Eyre, 1 Henry Blackstone's Rep. 273, note. (3) "Mutual and independent" covenants are such as do not go to the whole consideration on both sides, but only to a part, and where separate actions lie for breaches on either side to recover damages from the other for the injury he may have sustained by a breach of the covenants in his favor, and it is no excuse for a defendant in such action to allege and prove a breach of covenant on the part of the other party. Rives v. Baptiste, 25 Ala. 382, 391; Bailey v. White, 3 Ala. 330; Fulenwider v. Rowan, 136 Ala. 287, 34 So. 975; McCormick v. Badham, 191 Ala. 339, 67 So. 609; Nesbit v. McGehee, 26 Ala. 748; Duke of St. Albans v. Shore, 1 Henry Blackstone's Rep. 270, 273, and note of Boone v. Eyre, 126 Reprint, 160; Jones v. Barkley, 2 Dougl. 659, 665; Ritchie v. Atkinson, 10 East, 295, 298, 305. (4) A "condition subsequent" is created by a conveyance wherein an estate vests on condition, and may thereafter be defeated by the nonperformance of such condition, or where an estate vests on the condition that it may be defeated by the happening of the event stipulated against or the performance of the act or the existence of the condition contracted against, and when the act is done or the event does happen or condition exist, it defeats an estate already vested. S. A. L. Ry. Co. v. Anniston Mfg. Co., 186 Ala. 264, 65 So. 187; Hitt Lbr. Co. v. Cullman C. & C. Co., 200 Ala. 415, 76 So. 347; Birmingham 'Packing Co. v. Birmingham Belt Ry. Co., 201 Ala. 180, 77 So. 706; Elyton Land Co. v. S. & N. A. R. R. Co,, 100 Ala. 396, 405, 14 So. 207; White v. Saint Guirons, Minor (Ala.) 331, 341, 350, 12 Am. Dec. 56; 4 Kent's Com. 121.

Let up keep in mind the common-law application of the rule or tests applied, and from whence our later definitions come or applications have been made.

The covenant construed in Boone v. Eyre, 1 Henry Blackstone's Rep. 270, 273, 126 Reprint, 160, was contained in a deed where the plaintiff conveyed to defendant a plantation, "together with the stock of negroes upon it," in consideration of 500 pounds and an annuity of 160 pounds per annum for life, covenanted that the vendor had a good title to the plantation and was lawfully possessed of the negroes, and that defendant should quietly enjoy, and the "defendant covenanted that the plaintiff well and truly perform all and everything therein contained on his part to be performed, he the defendant would pay the annuity." The plea which was denied was that plaintiff was not, at the time of making the conveyance, legally possessed of the negroes, and so had no right to convey. Lord Mansfield covered the subject in this classic decision, viz.:

"The distinction is very clear, where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other. But where they go only to a part, where a breach may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent. If this plea were to be allowed, any one negro not being the property of the plaintiff would bar the action." Boone v. Eyre, 1 Henry Blackstone's Rep. 270, 273.

The test applied by Lord Ellenborough was, that where mutual covenants go to the "whole of the consideration on both sides, they are mutual conditions, the one precedent to the other, but where the covenants go only to a part, then a remedy lies on the covenant to recover damages for the breach of it, but it is not a condition precedent." Ritchie v. Atkinson (1808) 10 East, 295, 306. And this was as announced by Lord Mansfield in Boone v. Eyre, 1 Henry Blackstone's Rep. 273, 6 T. R. 573, and Jones v. Barkley, 2 Dougl. 684. The same test was employed by Lord Kenyon in Campbell v. Jones, 6 T. R. 570, 573.

[6, 7] From these cases came out later decisions on the subject. And it is established in this jurisdiction that the dependence or independence of covenants in contracts and conveyances is created and to be ascertained by and from the evident sense and meaning of the parties, having a due regard to the whole instrument, and that however transposed in the instrument such provisions may be, their precedency must depend on the order of time in which the intent of the transaction requires their performance. The old cases were Bailey v. White, 3 Ala. 330, 332; Rives v. Baptiste, 25 Ala. 382, 391; Nesbitt v. McGehee, 26 Ala. 749. Later applications of the rule are Elyton Land Co. v. S. & N. A. R. R. Co., 100 Ala. 396, 14 So. 207; McCormick v. Badham, 191 Ala. 339, 343, 67 So. 609; Fulenwider v. Rowan, 136 Ala. 287, 34 So. 975. It is further required in the construction of contracts and conveyances that the expressed intent of the parties, if not contrary to law, be given application (Patterson v. A. C. L. R. R. Co., 202 Ala. 583, 591, 81 So. 85) that the several provisions thereof will be so construed as to avoid a conflict, if the language will permit (Bethea v. McCullough, 195 Ala. 480, 70 So. 680; McCormick v. Badham, 191

Ala. 339, 67 So. 609; S. A. L. Ry. Co. v. Anniston Mfg. Co., 186 Ala. 264, 65 So. 187; Vizard v. Robinson, 181 Ala. 349, 61 So. 959; Fulenwider v. Rowan, 136 Ala. 287, 34 So. 975).

[8-11] When the language used is ambiguous or contradictory, resort is had to certain arbitrary rules of construction, as that a deed of bargain and sale for a valuable consideration is to be construed most strongly against the grantor therein; the granting clause and estate conveyed is upon the terms set out, and is limited thereby (Slaughter v. Hall, 201 Ala. 212, 77 So. 738; Stanley v. Daniel, 209 Ala. 588, 96 So. 783; Porter v. Henderson, 203 Ala. 312, 317, 82 So. 668; Allumns' Case, 208 Ala. 369, 94 So. 296; Vizard v. Robinson, 161 Ala. 349, 61 So. 959; Cobbs v. U. N. S. Co., 202 Ala. 333, 80 So. 415); inconsistency between clauses or conditions which cannot be reconciled must be resolved in favor of the first clause, that is, if upon the whole instrument consistent effect cannot be given to the subsequent clause. If there be apparent conflict between the granting and habendum clauses of deeds, the rule of construction is to harmonize, if possible, with the consistent and expressed intent of the parties; if this cannot be done, the first and granting clause will control. Porter v. Henderson, supra; Wallace v. Hodges, 160 Ala. 276, 49 So. 312; Ex parte Beavers, 34 Ala. 71; Petty v. Boothe, 19 Ala. 633. The habendum or covenants following cannot enlarge the estate granted in the premises of the deed; if there is a question of the "extent of the ownership" in the estate granted, resort may be had to these clauses for the purposes of construction. Porter v. Henderson, 203 Ala. 312, 82 So. 668; De Goosh v. Baldwin & Russ, 85 Vt. 312, 82 A. 182.

[12-17] It is further established that conditions subsequent, forfeiting estates are not favored (Libby v. Winston, 207 Ala. 681, 93 So. 631; Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 So. 858, 9 L. R. A. [N. S.] 663, 123 Am. St. Rep. 58; Vizard v. Robinson, 181 Ala. 349, 61 So. 959), unless the intention to create an estate on condition is clearly and unequivocally indicated. Libby v. Winston, supra. It is true that conditions subsequent may be created without the use of technical language, yet they must be clearly and unequivocally expressed, and are not favored. If it be doubtful whether a clause or condition is a mere covenant or a condition subsequent, courts will so construe it—if possible, within the objects and terms of the instrument and the general rules of construction obtaining—as to avoid a forfeiture of a vested estate, and will hold the same to be a covenant on which response may be made in damages for its conditions broken, rather than a condition subsequent reinvesting the estate in another than the original grantee named in the conveyance. It follows that if

there is no ambiguity or obscurity in the granting clause as to the nature and extent of what was intended to be conveyed, that effect should be given without the necessity of resorting to the arbitrary rules. Porter v. Henderson, 203 Ala. 312, 82 So. 668; Dickson v. Van Hoose, 157 Ala. 459, 47 So. 718, 19 L. R. A. (N. S.) 719. It may be said further that, in S. A. L. Ry. Co. v. Anniston Mfg. Co., 186 Ala. 264, 65 So. 187, it is declared that when there remains a doubt whether the clause in a deed be a covenant or a condition, the court will incline against the latter; if the grantor have other adequate remedy at law or in equity, a forfeiture will not be declared; the fact that the grantee cannot be placed in statu quo is an important factor in determining the question of forfeiture. It is presumed that parties intend to make a reasonable, rational contract. Burton v. Steverson, 206 Ala. 508, 91 So. 74. If it is susceptible of two constructions, unconscionable results are to be avoided. Patterson v. A. C. L. R. R. Co., 202 Ala. 583, 81 So. 85.

Was the title to the timber or the right to cut and remove the same "granted," as it was by Milner to Rosengrant for a large consideration, within the purview of Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 So. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58, a deed of "grant, bargain, and sale," with two years given to "cut and remove" (Vizard v. Robinson, 181 Ala. 349, 61 So. 959; Moore v. McAllister, 205 Ala. 512, 88 So. 643) "grant, bargain, sell and convey" the right to remove and build log roads, for a period of years?

The many forms taken for conveyance of standing timber and the right to cut and remove the same have been a fruitful source of litigation. In Mt. Vernon Lbr. Co. v. Shepard, 190 Ala. 574, 67 So. 286, the suit, in ejectment, was to recover standing timber after expiration of the time limit; West v. Maddox, 193 Ala. 612, 69 So. 101, was an action to recover for conversion after expiration of the time limit; Zimmerman Mfg. Co. v. Wilson, 201 Ala. 70, 77 So. 364, an action to quiet title to land and standing timber. In Hanby v. Dominick, 206 Ala. 539, 90 So. 287, the original right was an "agreement" to "cut and remove the timber" formerly held by E. L. Hatter, and the extension of time used the terms "grant and sell"; held, the grantee of the timber was the owner and so remains, notwithstanding expiration of the time limit for removal. In McGill v. Holman, 208 Ala. 9, 93 So. 848, 31 A. L. R. 941, the action was for trover.

Where the conveyance of standing timber provided that the grantee should have title thereto upon the "condition" that it be cut and removed from the land before a designated date, it was held that the estate was "subject to defeasance on failure to cut the timber on such date." Hitt Lumber Co. v. Cullman C. & C. Co., 200 Ala. 415, 76 So. 347:

"While it is usual to introduce in deeds conveying conditional fees a provision for reverter for breach of condition subsequent upon which the grant or estate is made to depend, the introduction of any express terms to that effect is not essential to the creation or preservation of the right to accomplish divestiture of the estate so conditionally granted or to accomplish its reinvestment in the grantor or his heirs. * * * The terms employed in the granting clause, in restriction of the grant so as to convey a conditional fee only, together with the express provision restricting the validity of the conveyance to a compliance with the conditions prescribed, preclude any doubt of the grantors' intent that the estate granted should terminate upon breach of the conditions, and thereupon reinvest in the grantors or their heirs." Libby v. Winston, 207 Ala. 681, 684, 93 So. 631, 633.

[18] The omission of any clause providing for re-entry by grantor for conditions broken or declaring the instrument void, or equivalent words, are to be considered in determining whether there was an intent of the parties to create a condition for a forfeiture, and not a mere covenant to remove within the time fixed. Keystone Lumber & Mining Co. v. Brooks, 65 W. Va. 512, 64 S. E. 614; De Goosh v. Baldwin, 85 Vt. 312, 82 A. 183; Hinton v. Vinson, 180 N. C. 393, 104 S. E. 897; Patterson v. A. C. L. R. Co., 202 Ala. 583, 589, 81 So. 85.

Looking, then, to the several agreements or conveyances between the parties at interest, it will be noted that from Milner to Rosengrant was of date November 28, 1919, the second agreement between these parties was dated February 2, 1920, the last agreement not being witnessed or acknowledged. The deed from Rosengrant to Boykin was made on January 28, 1920, and that from Boykin and wife to Lowery on April 12, 1921, and that from Milner to the complainant May on December 31, 1923. It is then necessary to inquire as to the right, title, or interest granted by the mesne conveyances from Milner to Lowery in and to the timber in question before the conveyance from Milner to May. The nature of said prior conveyances and the conditions and covenants therein contained must be declared. The agreement of November 28, 1919, recited that "the vendor" (Milner) and Anton Troha had entered into a contract of a former date whereby "the vendor did grant" to said Troha "the right to cut and remove certain timber from the lands" described, and "during the time and upon the terms" stated; recited the payment of the sum of $15,000; that said "contract" had been transferred and assigned to the purchaser (G. M. Rosengrant); that no timber had been cut and removed under the Troha contract; that it was the desire of Milner and Rosengrant to rescind and annul said former agreement, providing, however, that Milner should be under no liability to refund the $15,000 or any part thereof, "but should allow credits on said sum" as provid-

ed in the contract of November 28, 1919. The granting clause in said last instrument is:

"The vendor does hereby *grant* unto the purchaser the exclusive right to cut and remove from the lands hereinafter described, upon the terms and subject to the conditions herein stated, *and during the period of time mentioned* (italics supplied), unless this agreement be sooner terminated, as hereinafter provided, all merchantable oak timber presently measuring eighteen (18) inches and upwards at a point four (4) feet from the ground, and all merchantable gum timber presently measuring eighteen (18) inches and upwards at a point four (4) feet from the ground, and all merchantable ash timber presently measuring twelve (12) inches and upwards at a point four (4) feet from the ground, and all merchantable hickory timber presently measuring twelve (12) inches and upwards at a point four (4) feet from the ground, and all other merchantable timber presently measuring fifteen (15) inches and upwards at a point four (4) feet from the ground, said lands from which said timber may be cut and removed hereunder being situated in Washington County, Alabama, and being as follows:"

The lands are specifically described; the vendor covenants with the purchaser and his heirs and assigns that he has an indefeasible estate in and to the lands upon which the timber is situated, and a good right to grant "the rights herein granted"; that the timber was free from incumbrances; that he will "forever warrant the title to all of said timber which the purchaser may cut and remove" to the purchaser, his heirs or assigns, against the lawful claims of all persons whomsoever "so long as the purchaser, his heirs or assigns, have the right to cut and remove the same hereunder."

That instrument further recites in the third paragraph thereof that "the vendor also grants unto the purchaser during the term hereinafter mentioned, unless this agreement be sooner terminated as hereinafter provided, the following further and additional rights"; and the provisions following in said paragraph are: The right of free and uninterrupted ingress and egress to and from and over the lands for the purpose of cutting and removing the timber; the right to construct, maintain, and operate railroads and other roads on said lands for the purpose of cutting and removing the timber; the right to construct, maintain, and operate sawmills and other plants for the utilization of the timber, and camps for workmen; the right to use so much of the timber on said lands, "presently measuring less than twelve (12) inches at the butt," as may be necessary for such construction and maintenance of roads providing a profit a prendre appurtenant (Kennedy S. & C. Co. v. Sloss-Sheffield S. & I. Co., 137 Ala. 401, 34 So. 372), sawmills and other plants, camps, etc., with the proviso that "the rights * * * granted shall not be exercised in such a manner as to unrea-

sonably interfere with any of the present or future tenants of the vendor" on .said lands, or their agricultural operations, etc.

The fourth paragraph provides that the term "for and during which the rights hereinabove mentioned are *granted* shall begin on the *date hereof* and shall expire on the 10th day of June, 1928, unless this agreement be sooner terminated as hereinafter provided." (Italics supplied).

The extent of the right, title, interest, or estate granted is given expression in subsequent provisions as follows: The provision for the cutting and removing of the ash timber specified after the same is cruised, reports of such estimators, provision for estimators if there is disagreement, the appointment of an umpire, etc., all contained in paragraph 5 of the instrument.

The sixth paragraph provides a schedule by which "the purchaser agrees to pay the vendor for all of said merchantable timber as shown by the report of the estimators" according to the prices stipulated, namely, $7 per 1,000 feet, board measure, "for all of said white oak timber," $6, per said measure, "for all of said red oak timber," the same figure "for all of said ash timber," $5 per 1,000 feet, board measure, "for all of said hickory timber," $3.50 per like measure "for all of said tupelo gum timber," and at the rate of $2 per 1,000 feet, board measure, "for all other kinds of said timber for which prices have not been hereinabove fixed." The foregoing stipulations as to prices to be paid per 1,000 feet, board measure, for the respective timber, of the grades indicated, are of necessity referred to the second paragraph of the contract stipulating what merchantable timbers of the respective grades were intended to be "granted." The terms "oak timber," "ash timber," and "other estimated timbers" are defined; a provision is made as to the oak timber, that if the estimators have agreed and the purchaser shall have paid for in cash at the prices fixed, less the credit agreed to be made in the eighth paragraph as to an application of payment of the balance of the sum of $15,000 in Milner's hands (paid by Anton Troha), that "thereupon the title to said oak timber shall vest in the purchaser, provided and upon condition that he cut and remove the same from said lands before the 11th day of June, 1928"; specific provision is further made as to the ash timber, for its estimation per month, payment of compensation therefor, concluding with the stipulation that:

"None of said ash timber cut hereunder shall be removed from said lands until paid for in full. Payments for said ash timber cut each month, as shown by the report of said Inspectors, for said month, shall be made, at said prices hereinabove fixed for said ash timber, within 5 days after said report has been made. *The purchaser is required to cut all ash covered by this contract.*" (Italics supplied)*.*

Specific provision E is contained as to other estimated timbers and the payment therefor evidenced by four promissory notes of the purchaser, to be dated and delivered on the tenth day after the report of the estimators, etc., each for a sum equal to one-fourth of the total amount due from the purchaser for said other estimated timber, at the respective prices thereof, and payable on or before 6, 12, 18, and 24 months after the dates thereof, respectively, and to bear interest as indicated. It is further stipulated, as to said timber, that it shall be cut and removed from the lands with reference to the payment in full of the respective notes,; and after said amounts thereof have been cut, the purchaser shall not cut any more of said other estimated timber until the next note is paid in full; further provision is made, as to "other estimated timber," that after all of said notes have been paid in full, the purchaser "may cut and remove from said lands, *within said contract period, all the remainder of said other estimated timber*." (Italics supplied).

The seventh paragraph of the contract has to do with the rights of the purchaser in cutting oak timber during the time intervening between "the date hereof and the expiration of said 10 days after said report of said cruise;" that the cutting of said oak timber shall cease upon such expiration, unless, "within said 10 days after said report is made, said cash payment, if any be due, for said oak timber, is made as provided," etc. Then follow provisions for the payment by the purchaser for timbers cut of the times therein indicated, their inspection and reports thereof, payments for such inspectors or estimators, concluding with the stipulation for payment as follows:

"None of said timber cut before the date hereof and not paid for, and none of said oak timber cut during said intervening time shall be removed from said lands until paid for in full. Payments for all of said timber cut before the date hereof and not paid for, and payments for all of said oak timber cut each month during said intervening time as shown by said reports shall be made by the purchaser within 10 days after said written report hereof is furnished to the parties."

The eighth paragraph, adverted to in a foregoing provision, provides for credit from time to time of the balance of the sum of $15,000 in Milner's hands paid by Anton Troha "for said oak timber until said balance is paid in full," and it is further stipulated that, after said cash sum is absorbed, "payments for said timber shall be made as herein provided."

The ninth paragraph defines the terms "white oak" and "red oak" to include "all oak that belongs to the family of each, respectively."

The tenth paragraph, and that bringing

on this lawsuit under the averments of the bill as amended, is as follows:

"After the purchaser has cut and removed from any subdivision, or part thereof, of said lands herein described, any timber of any kind which he is herein authorized to cut and remove, he shall not thereafter cut or remove any other timber of the same kind from said subdivision or part thereof."

In the next paragraph (11) of this instrument, the purchaser agrees to fell and remove the timber in such manner as not to injure or damage standing timber not embraced in the agreement; to cast the same into the river in such manner as to injure "as little as possible" the banks of the river; not to interfere with the tenants of vendor and their present and future agricultural and horticultural operations; for the repair of injury and destruction to the land "to the extent necessary to restore it to its former good condition;" then following (paragraph 12) a stipulation against the right of the purchaser, his agents, servants, workmen, or employees to kill or catch any game of any kind in the lands in question.

Thereupon it is stipulated in paragraph 13 as follows:

"This agreement is intended as a grant by the vendor to the purchaser of the *right to cut and remove said timber*, together with said other rights herein mentioned, upon the terms, conditions and covenants herein stated, *and not as a sale of said timber*, and shall expire on the 10th day of June, 1928, but may be terminated sooner for cause as hereinafter authorized. Upon the expiration of this agreement, or sooner if it be terminated as hereinafter authorized, all rights herein granted by the vendor to the purchaser shall cease and determine, and all right, title, interest and claim of the purchaser in or to all of said timber as may then be on said lands shall thereupon revert to and be vested in the vendor." (Italics supplied).

The next paragraph, as per the context of the agreement would be paragraph 15, provided for the reports of estimators and the umpire, and notices required to be given thereunder to the vendor and the purchaser to be made to the respective parties at their stated addresses in Birmingham and Mobile, respectively.

The fourteenth paragraph provides that the vendor may terminate the agreement upon 10 days' written notice to the purchaser, "in the event the purchaser fails to pay any sum due by him thereunder or either of said notes as and when the same becomes due and payable, and this agreement shall terminate upon the expiration of said ten (10) days, in the event the purchaser fails to pay, within said time, all amounts due and unpaid by him at the time said notice is given," and that the vendor may terminate the agreement "upon 10 days' written notice to the purchaser, in the event the purchaser has violated any of the other terms, conditions, and covenants on his part herein contained, and fails within said period of 10 days to remedy the same." It will be noted of the two provisions for termination of the agreement, the first is for nonpayment of the amounts due "within said time," and the second is general in its reference in the event the purchaser has violated any of the other terms, conditions, and covenants, and fails to remedy the same, "within said period of 10 days."

The title, interest or right in the timber "granted," aside from the profit a prendre appurtenant thereof, was to the several classes of timber within the dimensions specified on November 28, 1919. Jasper Land Co. v. Manchester Sawmills Co., 209 Ala. 446, 96 So. 417; Miller-Brent Lumber Co. v. Dillard, 201 Ala. 18, 75 So. 308; Wright v. Bentley Lumber Co., 186 Ala. 617, 65 So. 353. The time for its cutting or removal was fixed at June 10, 1928. The legal effect of other pertinent "conditions" and covenants contained in said instrument will be presently determined.

[19] By reason of the subsequent conveyance by Rosengrant of certain of the timber (not oak, ash or cottonwood) to Boykin, describing it as "capable of being converted into logs that will measure sixteen (16) feet and over in length, and twelve (12) inches and over in diameter at the small end of the log," and the right of entry for logging purposes being fixed in that conveyance to January 1, 1930, a subsequent written agreement was entered into between Milner and Rosengrant on February 2, 1920. This instrument, not being witnessed or acknowledged as required by statute, was ineffectual as a conveyance of the legal title. Code 1923, § 6838.

It is established that such an instrument, not attested as required by law, is not a conveyance, nor is it made evident by age (Messer-Johnson Realty Co. v. Security, etc., Co., 208 Ala. 541, 94 So. 734; O'Neal v. T. C. I. & R. Co., 140 Ala. 378, 37 So. 275, 1 Ann. Cas. 319); yet it is further declared that such a written contract will operate in a court of equity as an agreement to convey. Branch v. Smith, 114 Ala. 463, 21 So. 423.

This writing, of date February 2, 1920, recited a large cash consideration, reduced the amount theretofore evidenced by purchase money notes, and made the balance payable in 60, 90 and 120 days after date. It agreed to grant as follows:

" * * * the grantor does hereby grant, bargain, sell, and convey unto the grantee the exclusive right to cut and remove from the lands hereinafter described upon the terms and subject to the conditions herein stated and during the balance of the time herein mentioned, all of the merchantable timber and trees measuring 12 inches and over in diameter at a

point 16 feet above the ground, except oak, ash, and cottonwood."

This instrument fixed the date of expiration of the timbering right the same as was contained in Rosengrant's conveyance to Boykin, defined a subdivision (the subject of section 10 in the first instrument) as "taken to be ten acres in a body," and stipulated that:

"Upon the expiration of the rights hereby granted, viz., on January 1, 1930, all rights herein granted by the grantor to the grantee shall cease and determine, and all right, title, interest and claim of the grantee in or to all of said timber as may then be on said lands shall thereupon revert to and be vested in the grantor."

In this second contract the timber contracted to be bought and paid for, as we have indicated, was of the specified dimensions on February 2, 1920. Jasper Land Co. v. Manchester Sawmills, supra. There were material changes in the provisions as to forfeiture by reason of the changed status of the respective parties and the payment of the purchase price substantially in cash or in notes for the purchase price maturing before there could be substantial change in the res by reason of cutting and removing timber. The provisions of section 14 are not embraced in the second instrument. The stipulations instead were in nature of provisions for the designation of granted timber from that not granted or sold; that thought necessary for the protection of timber coming to the required dimensions within the time limit, January 1, 1930.

We should search the four corners of the first instrument, having in mind the subject-matter and the moving consideration on both sides, for the intention of the parties (section 14) in employing the terms "may terminate * * * upon 10 days' written notice to the purchaser," in event the latter has "violated any of the other terms, conditions, and covenants on his part" and fails to "remedy the same" after the notice prescribed. This could not apply to damage to river bank, hunting on the lands, damages to crops, fences, and small timber, etc.; it could only apply to failure to pay as stipulated, and the continuance of cutting contrary to the provisions of section 10.

[20, 21] Did the provisions of section 10 apply to the respective rights of the parties as a covenant, the breach of which may be remedied by a judgment in damages, or as a condition subsequent, divesting an estate or vested property interests? It should be observed, of the pleadings contained in the original bill, that there is no averment of a failure to "remedy" after the prescribed notice had been given under provisions contained in section 14 of the first contract or conveyance; and it is no doubt a fact that the parties to the second contract were seeking to more specifically define a subdivision or a part thereof as was first given expression in section 10. However, in ascertaining the final meaning of the parties, as expressed in this provision in the contract to convey, we shall of necessity take account of their changed conditions and respective interests in the subject of the contract to convey. Theretofore the court had taken judicial knowledge of a subdivision of land by government survey (McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Hunt v. Jones, 203 Ala. 541, 84 So. 718; Caudle v. Commissioners' Court, 144 Ala. 503, 39 So. 307; Ledbetter v. Borland, 128 Ala. 418, 29 So. 579; Knabe v. Burden, 88 Ala. 436, 7 So. 92, which would not extend to a less subdivision than ¼ of one quarter section; and no doubt the parties were also trying to supplement this judicial knowledge in defining a "subdivision" or a part thereof. However this may be, we will look to the whole of the conveyances or contracts between Milner and Rosengrant to ascertain the expressed and implied meaning of the parties given expression therein. And in so doing, we cannot find that it was the intention of the parties to create a condition subsequent, in either instrument, forfeiting the right to cut the timber that was granted, and for which the large agreed compensation was paid. The office of the covenants (section 10 in the instrument of November 28, 1919), in both contracts was for identification of the timber sold and for the further identification and protection of timber not sold—that growing to the specified sizes after execution of the contract and before expiration of the time limit. This view is supported by the elimination of the provisions of section 14 from the contract to convey, the elimination of all provisions for reversion, except only as to timber uncut, at the expiration of the time limit. In this we find explanation of the retention of the modified provisions of section 10, the identification of timber sold as distinguished from that unsold, and for the better protection of the latter, coming to the specified dimensions after execution of the contract.

Having a due regard for the situation of the parties as shown in the contract, their respective interests and objects, the provisions in question should not be held to be conditions subsequent, or as, for that, a restriction on the right to cut the timber sold or contracted to be sold, but covenants that a given area be "cut clean" of the timber of the dimensions indicated, and of the species or character of trees being then cut, whether of oak, ash, hickory or tupelo gum, or "other kind of said timber." It follows from this construction of the contract that there may be as many entries and cuttings of timber as there are specific classifications of timber,

and not more; thereafter the purchaser may not return, "cut and remove any other timber of the same kind from said subdivision or part thereof." This construction gives harmony and justice in the premises under the rules of construction obtaining in this jurisdiction for ascertaining the meaning of equivocal or doubtful clauses and provisions in written contracts or conveyances.

Appellee insists that the grounds of demurrer assigned to the original bill in the court below are not sufficient to provoke a construction of said contracts exhibited in the pleading. We are of opinion, and so hold, that grounds Nos. 7, 8, 9, 11, and 18 are sufficient to raise the questions discussed under the bill as amended, and the demurrers directed or refiled thereto.

[22] The sufficiency of a cross-bill may be tested by demurrer. Burke v. Burke, 208 Ala. 502, 94 So. 513; Ex parte Woodruff, 123 Ala. 99, 26 So. 509.

Addressing the inquiry to the sustaining of demurrer to the cross-bill, it is apparent that Lowery, as grantee in the warranty deed from Rosengrant, had an interest, as a subsequent purchaser by mesne conveyance from Rosengrant, in the subject-matter of the bill—the land—in respect of the legal effect of the conditions and limitations contained in the conveyances thereof by Milner to Rosengrant (1) as to the period of time for which the right of cutting and removal of the timber was granted; and (2) the conditions upon which that right may be exercised without forfeiture, or on which the title granted may revert, if a reverter was provided.

[23] It cannot be successfully controverted that Lowery had the right to bring the proper parties before the court in order that, according to the facts and the law of the case, full and complete justice in the premises be done as to the subject-matter (Hodge v. Joy, 207 Ala. 198, 92 So. 171), under the maxim that courts of equity "delight to do justice, and not by halves." That is to say, in a measure every such case must be governed "by what is convenient and equitable" under its own facts, subject to "the recognized principles of equity." Webb v. Butler, 192 Ala. 287, 68 So. 369, Ann. Cas. 1916D, 815; O'Neal v. Cooper, 191 Ala. 182, 67 So. 689.

[24] The rule of multifariousness obtaining in this jurisdiction is not that all the parties have an interest in all the matters in controversy, "but that it is sufficient if each defendant has an interest in some of the matters involved, and they are connected with the others." Henry v. Ide, 208 Ala. 33, 93 So. 860; Gill v. More, 200 Ala. 511, 76 So. 453; Kimbrough v. Alred, 202 Ala. 413, 80 So. 617; Treadaway v. Stansell, 203 Ala. 52, 82 So. 12; Webb v. Butler, 192 Ala. 287, 68 So. 369, Ann. Cas. 1916D, 815; O'Neal v. Cooper, 191 Ala. 182, 67 So. 689; Bentley v. Barnes, 155 Ala. 659, 47 So. 159; Truss v. Miller, 116 Ala. 494, 22 So. 863. The common interest must be in the subject-matter, and the relief sought must be to determine the rights of all parties relating thereto. Wilson v. Henderson, 200 Ala. 187, 188, 75 So. 935.

In Bentley v. Barnes, supra, the bill was held multifarious in the effort to have an accounting from the partners in the "partnership business," and also relief against defendants, respectively, that did not affect the interest of the codefendant.

The right of Lowery to bring Rosengrant into the suit as a corespondent to the cross-bill, to defend the attack made by complainant in the original bill (May) upon the title granted by Milner to Rosengrant, and which the latter had warranted (had the cross-bill not gone further), could not be successfully controverted on the ground of multifariousness directed to the cross-bill. The common interest in the title to or interest in the land, made the subject of the original and cross-bill, and the necessity for all necessary parties to be brought before the court to determine the nature and extent of that right, title or interest, made a resort to the cross-bill on Lowery's part necessary, that is, as to the phase of that attack made by May upon the extent of that title to the land, and duration of the right to cut and remove timber therefrom, as contrary to the nature and legal effect of Rosengrant's warranty to Lowery of that title, and to give Rosengrant an opportunity to defend that title or warranty by him. Thus, only, could there be a proper determination of the nature and extent of May's title and interest to certain of the timber thereafter acquired by him with the fee from Milner. As counsel for appellant argue, it was unnecessary to the right of Lowery to bring in Rosengrant merely to defend; that Lowery destroy that defense by admitting in his cross-bill "the correctness of the conclusion that the title was defective as set forth in the original bill." However, the cross-bill sought to go further and have an adjudication of the rights and the resulting damages between Lowery and Rosengrant, in the event the defect in title alleged in the original bill proved true. The defense of the title in question should and could have been made in equity; and if there was failure to sustain the title, and to make good the warranty in this suit, the resulting damages to Lowrey were to be ascertained at law in a proper action based upon the breach of warranty. Burke v. Burke, 208 Ala. 502, 94 So. 513.

[25, 26] There is another rule of equity procedure that should not be overlooked, and to which we will now advert. It is admitted that there is no privity in estate between the original complainant, May, as the owner of the fee from Milner by subsequent convey-

ance, and Lowery, holding by mesne conveyances from Milner. The purposes of a cross-bill have been defined by Mr. Chief Justice Stone as defensive in nature; its requirements of pleading are that its subject and purpose "must be germane to the original bill," and that it should not bring in "utterly foreign" matter, unless within well-recognized exceptions, as, perhaps, in the case of a "set-off against an insolvent complainant." Whitfield v. Riddle, 78 Ala. 99; Burke v. Burke, 208 Ala. 503, 94 So. 513; Ex parte Conradi, 210 Ala. 213, 217, 97 So. 569. It is held that a cross-bill that departs from and is inconsistent with the answer cannot be entertained. Hatchett v. Blanton, 72 Ala. 423; Dill v. Shahan, 25 Ala. 694, 60 Am. Dec. 540; Graham v. Tankersley, 15 Ala. 634; Burke v. Burke, supra; Sims' Ch. Pr. § 647.

In Williams, Deacon & Co. v. Jones, 77 Ala. 294, the announcement is made that a claim cannot be made under a cross-bill and "asserted under, and as conferred by, an instrument or contract in connection with another which antagonizes the instrument or contract or any of its conferred rights." If this be not an apt analogy to the pleading before us, it is a good illustration of the requisition of consistent pleading by way of cross-bills.

In the case of Harton v. Little, 166 Ala. 340, 51 So. 974, dealing with consistent pleading in cross-bills, it was held that:

"A cross-bill cannot justify affirmative relief where its allegations are directly opposed to the allegations in the original answer, and hence, a cross-bill, praying for affirmative relief on the theory that one held legal title as trustee for complainant in the cross-bill, cannot be maintained where the original answer alleged that the holder of the legal title was a bona fide purchaser."

[27, 28] The sufficiency of the response by the cross-bill must be determined with reference to the allegation of the original bill (Ex parte Conradi, 210 Ala. 213, 97 So. 569; Burke v. Burke, 208 Ala. 503, 94 So. 513; Wilson v. Henderson, 200 Ala. 187, 75 So. 935), and, of necessity, by its consistency with the answer filed thereto. Harton v. Little, 166 Ala. 340, 51 So. 974; Hatchett v. Blanton, supra; Dill v. Shahan, supra; Graham v. Tankersley, supra. The relief sought by way of damages resulting from a breach of Rosengrant's warranty was therefore inconsistent with the answer to the original bill, and was independent of the general facts presented by the original bill. Burke v. Burke, supra. The cross-bill was therefore subject to appropriate demurrer directed to that feature of the cross-bill undertaking, in the alternative, to recover damages from Rosengrant, or his grantors, for failure of the warranty.

The demurrers of May to the cross-bill (the

second, third, and fourth grounds thereof) are well taken, and were properly sustained by the trial court. The cost of the appeal is divided between the respective parties.

The judgment of the circuit court in equity is affirmed in part, in part reversed, and remanded.

Affirmed in part, in part reversed, and remanded.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.

### On Rehearing.

THOMAS, J. [29] The covenant given expression in the first instrument and that of date February 2, 1920, was not a covenant running with the land. See Patterson v. A. C. L. R. Co., 202 Ala. 589–591, 81 So. 85; Leek v. Meeks, 199 Ala. 89, 74 So. 31; Jebeles & Colias Conf. Co. v. Brown, 147 Ala. 593, 41 So. 626, 11 Ann. Cas. 525; White v. Harrison, 202 Ala. 623, 81 So. 565; Morris & Morris v. Tuskaloosa Mfg. Co., 83 Ala. 565, 3 So. 689. The insertion of the descriptive words as to area was by way of an attempt to define a subdivision of timbered lands with reference to it being cut over. It was to say generally of substantial cuttings and removal of timber of a class that was conveyed from a timbered area (not by way of a casual or sporadic cutting), that the grantee having so entered and cut over an area and removed the timber (of a class specified) from ten acres or more, the grantee may not thereafter recut over timber of like kind and class from same area. It results that there may not be more entries and substantial cutting over of a given timbered area than there were different kinds and classes of timber specified in the contract or conveyances. The purpose of the stipulation in question was to define and preserve to the grantor the future growth of the timber upon and not taken when the given area is substantially cut over—logged according to the methods or conduct of such business.

[30] The foregoing and subsequent observations are in response to invocations on rehearing for a more specific statement of the nature of the relief that may be afforded for a breach, or an averred threatened breach, of said covenant. That covenant not being such as is held under the authorities to run with the land, the remedy for a breach thereof is at law when the same is adequate under the rules obtaining. When that remedy at law is inadequate by reason of a threatened breach resulting in a recognized irreparable injury, presenting a case for injunctive relief, the statu quo or subject-matter has been preserved or protected by a court of equity and its restraining processes. Rice v. Davidson, 206 Ala. 226, 89 So. 600; Tidwell v. Hitt Lbr. Co., 198 Ala. 236, 73 So. 486, L. R. A. 1917C, 232, 236, et seq.; Libby v. Winston,

78 213 ALABAMA REPORTS

207 Ala. 684, 93 So. 631; Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446, 96 So. 417; Manchester Sawmills v. Jasper Land Co., 211 Ala. 511, 101 So. 47; Thompson v. Johnson, 201 Ala. 315, 78 So. 91; Woodstock Operating Corp. v. Quinn, 201 Ala. 681, 79 So. 253; Irwin v. Shoemaker, 205 Ala. 13, 88 So. 129; Mobile & O. R. Co. v. Zimmern, 206 Ala. 37, 89 So. 475, 16 A. L. R. 1352; Hitt Lbr. Co. v. Cullman Property Co., 189 Ala. 13, 66 So. 720.

The application for rehearing is overruled.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.